ACCEPTED
04-15-00617-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/25/2015 11:17:13 PM
KEITH HOTTLE
CLERK

## NO. 04-15-00617-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/25/2015 11:17:13 PM
KEITH E. HOTTLE
Clerk

# IN THE FOURTH DISTRICT COURT OF APPEALS
# SAN ANTONIO, TEXAS

Toni Combest,
Appellant,

v.

Mustang Minerals, LLC,
Appellee.

## On Appeal From the 218th District Court
## La Salle County, Texas
## Trial Court Cause No. 14-08-00144-CVL

## Brief of Appellant

Sameer Mandke
Texas State Bar No. 24065670
sameer@gkmpllc.com
Robert F. Gilbert
Texas State Bar No. 24059321
gilbert@gkmpllc.com
GILBERT MANDKE PLLC
10100 Kleckley #15-B
Houston, TX 77075
Telephone: (832) 316-5322
Fax: (713) 341-9062

Kevin Schield
Attorney at Law
Texas State Bar No. 24075025
kevin.schield@schieldlaw.com
3611 Leadville Drive
Austin, TX 78749
Telephone: (512) 910-5095

**COUNSEL FOR APPELLANT**

**ORAL ARGUMENT REQUESTED**

- 1 -

# TABLE OF CONTENTS

Page

Identities of the Parties and Counsel...............................................................3

Index of Authorities .........................................................................................4

Statement of the Case......................................................................................6

Issues Presented ..............................................................................................7

Statement of Facts ...........................................................................................8

Summary of the Argument..............................................................................15

Argument........................................................................................................17
   Standard of Review.....................................................................................17
   I. The trial court erred by denying the Intervenor's/Appellant's Motion for
   Summary Judgment and granting in part Defendant/Appellee's Motion for
   Summary Judgment ...................................................................................18

      A. Under Texas law, the Combest Deed gave the Grantee at least some portion
      of the mineral estate.................................................................................18

      B. The Grantors reserved one-half of the mineral interest they owned, not from
      the land described.. ...................................................................................21

   II. Alternatively, the trial court erred in granting Mustang's Motion for Summary
   Judgment because the Combest Deed is ambiguous. ...........................................28

   III. Defendant/Appellee Mustang Minerals, LLC's capacity as an unregistered
   foreign entity is a fact issue that made summary judgment in its favor improper.29

Prayer .............................................................................................................36

Certificate of Compliance ................................................................................39

Certificate of Service .......................................................................................39

# IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellant:** | Toni Combest, Intervenor |
| **Appellate Counsel:** | Sameer Mandke<br>Robert F. Gilbert<br>GILBERT MANDKE PLLC<br>10100 Kleckley #15B<br>Houston, TX 77075<br><br>Kevin Schield<br>3611 Leadville Drive<br>Austin, TX 78749 |
| **Trial Counsel:** | Andrew G. Pate<br>NIX, PATTERSON & ROACH, LLP<br>205 Linda Dr.<br>Daingerfield, TX 75638 |
| **Appellee:** | Mustang Minerals, LLC, a Delaware limited liability company |
| **Trial and**<br>**Appellate Counsel:** | David Rapp<br>EGGLESTON KING, LLP<br>102 Houston Avenue<br>Weatherford, TX 76086 |

# INDEX OF AUTHORITIES

Page

Cases

*Averyt v. Grande*, 717 S.W.2d 891, 893 (Tex. 1986) ...............................................24

*Clack v. Garcia*, 323 S.W.2d 468 (Tex.Civ.App.—San Antonio 1959, no writ) ...............................................................................................................25,26

*Garza v. Prolithic Energy Co., L.P.*, 195 S.W.3d 137 (Tex.App. – San Antonio 2006) ........................................................................................ 21,28

*Gore Oil Company v. Roosth*, 158 S.W.3d 596 (Tex.App.–Eastland 2005, no pet.) ...............................................................................................................28

*Hejl v. Wirth*, 343 S.W.2d 226 (Tex. – 1961) ..........................................................33

*Hooks v. Neil*, 21 S.W.2d 532 (Tex.Civ. App.—Galveston 1919, writ ref'd) ...24,26

*Hunsaker v. Brown Distrib. Co.*, 373 S.W. 3d 153 (Tex.App. – San Antonio 2012) ...............................................................................................................17

*Johnson v. Conner*, 260 S.W.3d 575 (Tex.App. –Tyler 2008)..............................22

*King v. National Bank of Wichita Falls*, 192 S.W.2d 260 (Tex. 1946)...................24

*Luckel v. White*, 819 S.W.2d 459 (Tex. 1991)........................................................22

*Middleton v. Broussard*, 504 S.W.2d 839, 842 (Tex. 1974)...................................26

*My-Tech, Inc. v. University of North Texas*, 166 S.W.3d 880 (Tex. 2005).............33

*Reeves v. Towery*, 621 S.W.2d 209 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.) ...............................................................................................................23

*Sharp v. Fowler*, 252 S.W.2d 153 (Tex. 1952)..................................................19,20

*State v. Dunn*, 574 S.W.2d 821 (Tex.App.–Amarillo 1978, writ ref'd n.r.e.)..........23

## Statutes

Tex. Bus. Org. Code §1.002(29)................................................................................31

Tex. Bus. Org. Code §9.001 ...................................................................................30

Tex. Bus. Org. Code §9.051(b)................................................................................30

Tex. Bus. Org. Code §9.051(c)(2) ...........................................................................31

Tex. Bus. Org. Code §9.052(a)................................................................................31

Tex. Prop. Code §22.001 .......................................................................................32

## STATEMENT OF THE CASE

*Nature of the case:*    Trespass to try title case concerning ownership of oil, gas, and other minerals.

Specifically, whether a warranty deed conveying land to the Appellant also transferred minerals underlying the tract.

*Judgment signed by:*    Hon. Donna Rayes.

*Trial court:*    218th Judicial District, La Salle County, Texas.

*Trial Court Disposition:*    Take Nothing Summary Judgement in favor of Defendant, Mustang Minerals, LLC.

*Parties on appeal:*    Intervenor/Appellant Toni Combest.

Defendant/Appellee Mustang Minerals, LLC.

**ISSUES PRESENTED**

I.   Whether the court erred in partially granting Defendant Mustang Minerals, LLC's Motion for Summary Judgment and entering a take-nothing judgment on Intervenor Toni Combest's claims when the warranty deed in question (the "Combest Deed"):

   a.  on its face shows an intention to convey minerals; and

   b.  the Combest Deed's reservation is from what the grantor owned at the time, not from the land described.

II.  Whether the Combest Deed is susceptible to more than one reasonable interpretation and therefore ambiguous on its face.

III. Whether a foreign entity that is doing business in Texas, but has refused to register with the Secretary of State of Texas, is nonetheless allowed to receive a take-nothing judgment in its favor in a trespass-to-try-title suit, which effectively renders title in its favor, when it would not otherwise be allowed to bring such a suit without registering with the Secretary of State.

**STATEMENT OF THE FACTS**

*Overview*

This appeal concerns title to oil, gas, and minerals underlying real property located in La Salle County, Texas. Both the Appellant, Toni Combest, and the Appellee, Mustang Minerals, LLC, have claimed title to some portion of the disputed minerals. The dispute arose when Chesapeake Exploration, LLC, the lessee of the minerals, stopped payment to Toni Combest at the behest and in favor of Mustang Minerals, LLC, which claims that Toni Combest has no interest in the disputed minerals. CR: 47-48. Toni Combest, however, in fact has title to at least one-fourth of the minerals underlying the tract in the Combest Deed.

*History of Title to the Disputed Minerals*

Horace Combest and Inga Combest, husband and wife, acquired a tract of land in La Salle County, Texas in 1967 through the following conveyances:

      a. Warranty Deed from Lottie Edna Burton to Horace Edwin Combest and wife, Inga Mable Combest, dated November 28, 1967, recorded in Volume 145, Page 105, of the Property Records of La Salle County;

      b. Warranty Deed from Robert L. Burton and wife, Ann M. Burton,

to Horace Edwin Combest and wife, Inga Mable Combest, dated November 28, 1967, recorded in Volume 145, Page 107, of the Property Records of La Salle County; and

c. Warranty Deed from Mrs. Charles L. Cunningham, to Horace Edwin Combest and wife, Inga Mable Combest, dated November 21, 1968, recorded in Volume 151, Page 94, of the Property Records of La Salle County.

The above referenced deeds shall be referred to collectively hereafter as the "Source Deeds". CR:66-67; 69-70; 72-73. The Source Deeds each contains an exception and reservation clause reserving an undivided one-half in and to the oil, gas, and minerals underlying the tracts conveyed to the grantors. *Id.* Under the Source Deeds, and undisputed in this case, Horace and Inga Combest received the surface of the tracts described and an undivided one-half interest in and to the oil, gas, and other minerals underlying the tract described. *Id.* The undivided one-half mineral interest passed to Horace and Inga Combest is the basis of the underlying suit and the disputed minerals (hereinafter the "Disputed Mineral Estate").

By Warranty Deed dated September 18, 2003, recorded in Volume 436, Page 5 of the Property Records of La Salle County, Texas, Horace and Inga Combest conveyed the property they received from the Source Deeds to Preston and Toni Combest, husband and wife (hereinafter referred to as "the Combest

- 9 -

Deed"). CR:64. The property conveyed under the Combest Deed was described as follows:

> Property situated in La Salle County, Texas, being situated in the A. J. Toutant Beauregard Survey No. 62, Abstract No. 959, also known as Tracts 9, 10, 23, & 24, all in Block 62 of the Gardendale Colony Lands as shown in Plat recorded in Volume U, Pages 134 and 135, Property Records of La Salle County, Texas, containing 80 (eighty) acres of land more or less

and more fully described in the Combest Deed.

Preston Combest passed away, leaving Toni Combest as his surviving spouse. On or about March 22, 2012, Chesapeake Exploration, LLC, as lessee, executed an oil and gas lease with Toni Combest as lessor. CR:3, ¶ 10. Next, by Correction Mineral Deed dated September 5, 2013, recorded in Volume 735, Page 58, of the Property Records of La Salle County, Texas, Toni Combest conveyed half of her interest in and to the Disputed Mineral Estate to Mountain Laurel Minerals, LLC. CR: 81-82.

Meanwhile, Horace and Inga Combest both passed away, leaving as their sole heir their son, David Combest. CR:3 ¶ 9. Chesapeake Exploration, LLC, as lessee, also executed an oil and gas lease with David Combest, as lessor, on or about March 22, 2012. *Id.* ¶ 10. Subsequently, David Combest conveyed all of his interest in and to the Disputed Mineral Estate to US Mineral Resources, LLC by Mineral Deed dated November 14, 2012, and US Mineral conveyed all of its interest in the Disputed Mineral Estate to Mustang Minerals, LLC by Mineral Deed

dated November 20, 2012. CR: 3, ¶ 11.

Chesapeake pooled the leases by Toni Combest and David Combest into a unit and proceeded to commence drilling operations on the unit. CR: 4 ¶ 13.

*The Title Dispute*

Fortunately, Chesapeake was successful in drilling a producing oil well from the units into which the Disputed Mineral Estate was pooled. Toni Combest and Mountain Laurel received royalty payments for their undivided one-half interest in the Disputed Mineral Estate for three months. CR: 4: ¶ 13. Suddenly and abruptly, Chesapeake stopped making royalty payments to Toni Combest and Mountain Laurel. When Mountain Laurel investigated why payments had been stopped, Chesapeake informed them that Mustang Minerals had complained that they owned all of the Disputed Mineral Estate, including the undivided one-half interest in the Disputed Mineral Estate claimed by Toni Combest and Mountain Laurel Minerals. *Id*.

In order to clear the cloud on title created by Mustang, on or about August 19, 2014, Mountain Laurel instituted the underlying trespass to try title suit, which was joined by Toni Combest as Intervenor on or about November 12, 2014. CR: 1-16; CR: 26-36. Both Toni Combest and Mountain Laurel pled that Toni Combest and Preston Combest had received either all of the Disputed Mineral Estate, or

one-half of the Disputed Mineral Estate under the Combest Deed.

Mustang filed an answer in response and entered a general denial. CR: 21-22.

*Summary Judgment Proceedings*

Given that all the parties claimed their interest in the Disputed Mineral Estate on the basis of a single deed, the Combest Deed, which interpretation of the deed, if it is unambiguous, is a matter of law, all parties subsequently filed competing Motions for Summary Judgment, and a hearing was held on the matter on January 29, 2015. CR: 97.

Plaintiff Mountain Laurel Minerals filed a Motion for Summary Judgment, and Intervenor Toni Combest joined in the motion. CR: 44-87; CR: 100. In the Motion for Summary Judgment, Mountain Laurel and Toni Combest urged an interpretation of the Combest Deed under the Duhig Doctrine, that if the grantors under the Combest Deed intended to reserve and except their then owned undivided one-half in the minerals but not the one-half interest owned by their predecessors, then the Duhig Doctrine requires that the grantees under the Combest Deed received the grantors' undivided one-half interest in the minerals. CR: 50-55 ¶ IV. A.-L.

Both Mountain Laurel and Toni Combest filed together a response to Mustang's Motion for Summary Judgment. CR: 121-132. In the response, both

urged that, if the Duhig Doctrine is inapplicable, then, in the alternative, the grantors effectively reserved one-half of the mineral interest they owned at the time. CR: 125-128 ¶ IV. A-C. The response also included a Motion to Strike Mustang's Motion for Summary judgment due to the fact that Mustang, a Delaware limited liability company, has failed to register in the State of Texas, despite the fact that it is doing business in Texas. CR: 127-130 ¶ VI. A.-K.

The trial court took the competing motions under advisement and rendered judgment in favor of Mountain Laurel and Toni Combest, granting their Motion for Summary Judgment. CR:142. On May 1, 2015, the trial court ordered that Mountain Laurel's attorney draft an order, present it to Mustang's attorney, and then submit to the trial court for signature.

However, Mustang filed motions to reconsider, and a hearing was had on June 2, 2015. CR:153. Despite presenting no new case law, or any authority in favor of its proposition that no minerals were conveyed under the Combest Deed, on June 22, 2015, the trial court reversed its prior ruling, signing the order submitted by Mustang's attorney to enter a take-nothing judgment against Mountain Laurel, without approval as to form by Mountain Laurel's or Toni Combest's attorneys. CR:159-161. The order submitted by Mustang only disposed of Mountain Laurel, and an additional hearing was had on a motion to reconsider by both Mountain Laurel and Toni Combest, and a Motion for Summary Judgment

against Toni Combest on September 2, 2015. CR:188. In this hearing, Toni Combest and Mountain Laurel again urged the trial court that the grantors under the Combest Deed reserved at most half of the minerals they owned at the time. CR:196—197 ¶ IV. B. Also, at the hearing, Mountain Laurel's counsel raised the issue that Mustang, a Delaware limited liability company, is doing business in Texas but is not registered with the Texas Secretary of State, and therefore is not entitled to any kind of affirmative relief. RR:12/15- RR:13/1. Mustang's counsel responded that Mustang does not have to register to do business in Texas and confirmed that Mustang is not registered with the Secretary of State. RR:13/12- RR:13/17.

The trial court, on September 2, 2015, denied the Motion for Reconsideration by Toni Combest and Mountain Laurel, and granted Mustang's motion for a take-nothing judgment against Toni Combest. CR:201-202. These orders finally disposed of all the parties thus making this case appealable.

## SUMMARY OF THE ARGUMENT

The Combest Deed is an unusually drafted deed, with several definition paragraphs preceding the actual grant, habendum, and warranty clauses. Nonetheless, the Combest Deed granted and warranted the property to the grantee. The term "property" in the Combest Deed contains both a description of an eighty acre tract and an exception and reservation of an undivided one-half of "all the oil, gas, and/or other minerals." The reservation does not specify that it was made from the above-described land and, under Texas law, is therefore a reservation of one-half from the interest the grantor owned at that time.

Further, since "property" included the grantors' reservation in interest, the reservation, as well as the property described, was made "subject to" the items in the reservation/exception language. So, to the extent that the property conveyed was reduced by such "subject to" language, the grantors' reservation was equally reduced. So, if only one-half of the minerals underlying the tract was available to be conveyed, thanks to the "subject to" language, then the grantors' were only able to reserve half of what remained.

In any case, a determination that the grantees under the Combest Deed obtained no interest in the minerals fails to read the Combest Deed in accordance

with fundamental principles of Texas law and should be rejected. The grantee received at a minimum a one-fourth interest in the mineral estate.

Finally, a take-nothing judgment in Mustang's favor is to give Mustang title to the Disputed Mineral Estate. However, Mustang Minerals, LLC, a foreign entity formed under the laws of the State of Delaware, is required to register with the Texas Secretary of State in order to do business in Texas and be afforded the same immunities and privileges as a domestic entity in good standing. If Mustang is doing business in Texas, then it would not be permitted to bring a suit for trespass to try title itself until it registers with the Texas Secretary of State and pays its franchise taxes. As such, Mustang is not then permitted to receive affirmative relief even as a defendant when it could not otherwise request such relief because of its deliberate refusal to register with the Secretary of State and follow the laws of Texas. To that extent, a fact issue was raised by Mustang's counsel when he confirmed that Mustang is not registered with the Secretary of State, and discovery should be permitted to determine if Mustang is doing business in Texas, and therefore required to register with the Secretary of State.

# ARGUMENT

## Standard of Review

The standard of review for competing motions for summary judgment is de novo, as stated in *Hunsaker v. Brown Distrib. Co.*, 373 S.W. 3d 153 (Tex.App. – San Antonio 2012):

> "We review a summary judgment *de novo. Provident Life & Acc. Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). We must therefore consider all the evidence in the light most favorable to the respondent, indulging all reasonable inferences in favor of the respondent, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). When competing motions for summary judgment are filed, and one is granted and the other denied, we must review all issues presented and render the judgment the trial court should have rendered. *Comm'rs Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997)." *Id.* at 155.

In the case at hand, the trial court erred in partially granting the Defendant/Appellee's Motions for Summary Judgment. The trial court should have denied the Defendant's/Appellee's Motions for Summary Judgment and partially granted the Intervenor's/Appellant's Motion for Summary Judgment. Additionally, the trial court should have denied the Defendant's/Appellee's

Motions for Summary Judgment because a fact question was raised as to Mustang Minerals, LLC's capacity as an unregistered foreign entity.

**I.     The trial court erred by denying the Intervenor's/Appellant's Motion for Summary Judgment and granting in part Defendant/Appellee's Motion for Summary Judgment**

For the reasons discussed below, the Trial Court erred by granting Mustang's Motion for Summary Judgment in part and rendering a take nothing judgment against Toni Combest and Mountain Laurel.  Toni Combest and Mountain Laurel both pled claims that they owned some portion of the Disputed Mineral Estate, and it was improper for the Trial Court to rule, by way of a take-nothing judgment, that Toni Combest and Mountain Laurel could not succeed on any of their claims. Further, the Trial Court erred by not granting in part the Motions for Summary Judgment by Toni Combest and Mountain Laurel, since Toni Combest and her late husband received at least one-half of the Grantors' interest in the minerals under the Combest Deed.

**A. Under Texas law, the Combest Deed gave the Grantee at least some portion of the mineral estate.**

Based on the fundamental principles of Texas real property law and the canons of construction, on the face of the Combest Deed the Grantor intended to

convey some portion of the mineral estate underlying the land. The property described in the Combest Deed is as follows:

> **Property (including improvements):** Property situated in LaSalle County, Texas, being in ABST 959 SUR 62 J T Beauregard Survey, Tracts 9, 10, 23, & 24, AB Blk: 0959, Lot 0062, 80 (eighty) acres of land.
> The grantor herein, Horace Combest, and Inga Combest excepts from this conveyance and reserves unto themselves, their heirs and assigns an undivided one-half (1/2) interest in and to all of the oil, gas, and/or other minerals.

The property description includes both a legal description of the tract of land followed by a fractional exception and reservation. Therefore, the property described includes the surface of the tracts and that fraction of the minerals that were not excepted from the property description, and this is the land that was intended to be conveyed by the Grantors under the Combest Deed.

It is well settled in Texas that to describe land in a deed is to purport to convey both the surface and the minerals underlying the tract described, unless an intent to convey a lesser estate is expressed on the face of the deed. Illustrative of this principle is the case of *Sharp v. Fowler*, 252 S.W.2d 153 (Tex. 1952). In *Sharp v. Fowler*, the Texas Supreme Court was tasked with determining whether minerals underlying a tract of land were conveyed when the deed described the land as "being the same land" described in a prior deed that conveyed the surface only. *Id.* at 153. The question was whether the

grantor under the deed had, by reference to a prior surface only deed effectively reserved all the minerals. The *Sharp* Court held that the grantor had not made such a reservation of all the minerals. The *Sharp* Court analyzed the deed as follows:

> "Analyzing the description in that deed, it will be observed in the first place that it contains a grant of 'land.' **That is a term which on its face includes the minerals in and under the land.** The broad scope of the meaning of the word 'land' is well illustrated by our decision in Holloway's Unknown Heirs v. Whatley, 133 Tex. 608, 131 S.W.2d 89, 123 A.L.R. 843. Following the grant there is designated the number of acres granted and the county and survey in which the land is located. That language, standing alone, is insufficient to constitute a legal description of the land. Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703; Admas v. Duncan, 147 Tex. 332, 215 S.W.2d 599. But the description is made certain by the language 'being the same land described in' the Forst deed. **To describe land is to outline its boundaries so that it may be located on the ground, and not to define the estate conveyed therein.** It is to be observed that the reference in the Jordan deed is not to the land conveyed [151 Tex. 494] in the Frost deed but to the land described in that deed. [emphasis added]" *Id*. at 154.

When land is described in a deed, the grantor is purporting to convey both the surface and the minerals in and under the land described, unless otherwise expressly indicated. The *Sharp* Court went on to state, "A reservation of minerals to be effective must be by clear language. Courts do not favor reservations by implication." *Id*. at 154 (Tex. 1952) (citing *Sellers v. Texas Central Ry. Co.*, 81 Tex. 458, 17 S.W. 32, 13 L.R.A. 657; *State v. Black Bros.*, 116 Tex. 615, 297 S.W. 213, 53 A.L.R. 1181).

Thus, we do not imply a reservation on behalf of the grantor when none is expressed on the face of the deed. Mere reference to another instrument in the

description in *Sharp v. Fowler* did not suddenly impute all of the reservations and exceptions of that instrument into the deed in question. Similarly, the Combest Deed does not contain an express exception, reservation, or other exclusion of ALL of the minerals from the deed. The Grantors under the Combest Deed could have used the words "excepting and reserving ALL minerals," "no minerals," "surface only" or similar language, but purposefully chose not to. The only logical conclusion, then, is that they had every intention of granting to the Grantee some portion of the mineral estate. Thus, the Grantee under the Combest Deed received some portion of the mineral estate under the deed.

**B. The Grantors reserved one-half of the mineral interest they owned, not from the land described.**

Given that the Grantors under the Combest Deed intended to convey some portion of the minerals underlying the land, the question remains: what portion of the minerals were reserved and conveyed? In order to answer this question, we must first address the accepted rules of construction in Texas.

When interpreting a deed just as in interpreting a contract, the intent of the parties is to be determined from the express language found within the four corners of the document. *Garza v. Prolithic Energy Co., L.P.,* 195 S.W.3d 137,141 (Tex.App. – San Antonio 2006) (citing *Luckel v. White*, 819 S.W.2d 459, 461-63 (Tex. 1991); *Walker v. Foss*, S.W.2d 701, 704 (Tex.App. – San Antonio 1996, no

writ)). The construction of an unambiguous deed is a question of law for the court. *Luckel v. White,* 819 S.W.2d 459, 461 (Tex. 1991) (citing *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986)). The primary duty of a court when construing a deed is to ascertain the intent of the parties from all of the language in the deed by the fundamental rule of construction known as the "four corners" rule. *Id*. (citing *Garrett v. Dils Co.*, 157 Tex. 92, 94-95, 299 S.W.2d 904, 906 (1957); 1 E. KUNTZ, THE LAW OF OIL AND GAS, § 16.1 (1987); 6A R. POWELL, THE LAW OF REAL PROPERTY, p. 899, at 81A-108 (P. Rohan ed. 1991)).

A deed will be construed to confer upon the grantee the greatest estate that the terms of the instrument will permit. *Johnson v. Conner*, 260 S.W.3d 575 (Tex.App. –Tyler 2008) (citing *see Lott v. Lott,* 370 S.W.2d 463, 465 (Tex. 1963); *see also Jasper State Bank v. Goodrich,* 107 S.W.2d 600, 602 (Tex.Civ.App.- Beaumont 1937, writ dism. w.o.j.)).  A warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions that reduce the estate conveyed. *Id.* (citing *Sharp v. Fowler,* 151 Tex. 490, 493, 252 S.W.2d 153, 154 (Tex. 1952); *Cockrell v. Tex. Gulf Sulphur Co.,* 157 Tex. 10, 15, 299 S.W.2d 672, 675 (Tex. 1956); *Lewis v. Midgett,* 448 S.W.2d 548, 551 (Tex.Civ.App.–Tyler 1969, no writ). *See also Melton v. Davis,* 443 S.W.2d 605, 608 (Tex.Civ.App. –Tyler 1969, writ ref'd n.r.e.)).

"As a general rule, exceptions are strictly construed against the grantor."

*State v. Dunn*, 574 S.W.2d 821, 824 (Tex.App.–Amarillo 1978, writ ref'd n.r.e.) (citing *Stroud v. Hunt Oil Co.*, 147 S.W.2d 564, 567 (Tex.Civ.App.–Eastland 1941, no writ). "It is a familiar rule in the construction of deeds that a reservation in favor of the grantor therein is to be most strongly construed against the grantor." *Reeves v. Towery*, 621 S.W.2d 209, 212 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.) (citing *Settegast v. Foley Bros. Dry Goods Co.*, 114 Tex. 452, 270 S.W. 1014 (Tex.Comm'n App.1925, opinion adopted); *Collier v. Caraway*, 140 S.W.2d 910 (Tex.Civ.App.–Beaumont 1940, writ ref'd)).

The exception and reservation language within the Property Section in the Combest Deed reads as follows:

"The grantor herein, Horace Combest, and Inga Combest **excepts from this conveyance** and reserves unto themselves, their heirs and assigns an undivided one-half (1/2) interest in and to all of the oil, gas, and/or other minerals. [emphasis added]"

The plain language of the reservation clause indicates that the Grantors intended to reserve from the *conveyance* "an undivided one-half (1/2) interest in and to all of the oil, gas, and/or other minerals." What the Grantors failed to plainly state was whether they intended to reserve one-half of all the minerals from the land *conveyed* or one-half of the minerals from the lands *described*.

In *Averyt v. Grande,* 717 S.W.2d 891, 893 (Tex. 1986), the Texas Supreme Court encountered the same issue in a deed that contained descriptions of several tracts of land, followed by the following "subject to" and reservation provisions:

> "LESS, HOWEVER, AND SUBJECT TO an undivided 1/2 interest in the oil, gas, sulphur, and all other minerals, described in that deed from Rubie Keilers and Annie Keilers, to Texas Osage Cooperative Royalty Pool, et al, dated May 2, 1930, and recorded in Volume 152, Pages 75-76, Deed Records of Fayette County, Texas.
> ....
> There is hereby excepted from this conveyance and reserved to Grantor, its successors and assigns, an undivided 1/4th of the royalty covering all of the oil, gas and other minerals, including but not limited to uranium, coal, lignite, iron, gold, silver, and all other minerals, whether or not now known to be valuable and whether by drilling, strip mining, or any other method, in, to and under or that may be produced *from the lands above described*....
> ....[emphasis added]" *Averyt* at 892-93.

The court identified the issue as whether "Grande reserved one-fourth of the royalty from the entire 86.82 and 0.003 acres or one-fourth of the royalty from the undivided one-half mineral interest Grande owned at the time of the conveyance." *Averyt* at 893. The Court looked to the rules of construction as described in *Hooks v. Neil*, 21 S.W.2d 532 (Tex.Civ. App.—Galveston 1919, writ ref'd) and *King v. National Bank of Wichita Falls*, 144 Tex. 583, 192 S.W.2d 260 (1946). In *Hooks*, the grantor reserved "a one-thirty second part of all oil on and under the said land and premises *herein described and conveyed.* [emphasis added]" *Averyt* at 893 (citing *Hooks* at 538). The court then looked to *King* for the other rule of

- 24 -

construction. In *King*, the grantor reserved "an undivided one eighth of the usual and customary one eighth royalty ... in oil and gas and other minerals that may be produced from the *hereinabove described land*. [emphasis added]" *Averyt* at 893 (citing *King* at 262). The *Averyt* Court then noted that "[t]his court focused on the word "described" to hold that the grantor reserved an undivided one eighth of the royalty from the minerals under the entire described tract, not just the grantor's undivided one-half." *Averyt* at 893 (citing *King* at 262).

The pertinent deed in *Averyt* "reserves one-fourth of the royalty from minerals 'that may be produced from the *lands above described*'" and the court finds that this language "places the reservation within the *King* rule." *Averyt* at 894 (emphasis added).

Similarly, in *Clack v. Garcia*, 323 S.W.2d 468 (Tex.Civ.App.—San Antonio 1959, no writ), the grantor owned one-eighth of the surface and one-sixteenth of the minerals of a one hundred acre tract. He conveyed his surface interest to the grantee and reserved a non-participating royalty interest as follows:

> "There is excepted from this conveyance, not herein conveyed, but expressly retained and reserved by grantors, an undivided one-sixteenth (1/16th) interest (same being one half of the usual one-eighth royalty) in and to all the oil, gas and other minerals in, to, under and that may be produced from the interest of said grantors in said land." *Clack* at 469.

The *Clack* Court held that the grantor reserved a royalty described as one-sixteenth of his interest. *Id.* (citing *Hooks v. Neil*). Like in *Clack*, the Combest

Deed has the same "from this conveyance" language and has no language indicating the reservation was from the "lands above described." *See Id.*

Without the words "produced from the above described lands" following the reservation, the controlling case is *Hooks v. Neil*, and the reservation in the Combest Deed turns on the meaning of "conveyance," since the Grantors "excepts *from this conveyance* and reserves unto themselves… [emphasis added]" *See Hooks v. Neil*, 21 S.W.2d 532 (Tex. Civ. App. 1929, writ refused); *see also Middleton v. Broussard*, 504 S.W.2d 839, 842 (Tex. 1974) (analyzing *Hooks*, the court stated the rule as follows: "Where a fraction designated in a deed is stated to be a mineral interest in land described in the deed, the fraction is to be calculated upon the entire mineral interest; conversely, where a fraction designated in a reservation clause is stated to be a mineral interest in land conveyed by the deed, the fraction is to be calculated upon the grantor's fractional mineral interest." (citing BARBER, DUHIG TO DATE: PROBLEMS IN THE CONVEYANCING OF FRACTIONAL MINERAL INTERESTS, 13 SW. L.J. 320, 322-23 (1959); and *see* 1 H. WILLIAMS AND C. MEYERS, OIL AND GAS LAW § 312.2 (1972 ed.); 1 E. KUNTZ, OIL AND GAS § 14.5, at 331 (1962).)

Doing a quick internet search for the common legal definition of "conveyance", one finds the word to be defined as follows:

    a. From http://www.merriam-webster.com/dictionary/conveyance -

i. "the action of conveying"

ii. "a means or way of conveying: as

1. An instrument by which property is conveyed

2. A means of transport"

b. From http://dictionary.reference.com/browse/conveyance:

"3. Law

1. The transfer of property from one person to another.

2. The instrument or document by which this is effected."

c. From http://legal-dictionary.thefreedictionary.com/conveyance - "n. a generic term for any written document which transfers (conveys) real estate property or real property interests from one party to another. A conveyance must be acknowledged before a notary (or if a court judgment be certified as the same as the document on file) and recorded with the County Recorder or Recorder of Deeds."

As is demonstrated above, the word "conveyance" refers to that which is conveyed. Since one cannot convey that which one does not own, despite describing the entire tract of land in the Combest Deed, the largest estate that the Grantor could convey at the time was the surface and an undivided one-half of the minerals. Therefore, when the Grantors excepted from the "conveyance", they were excepting one-half of one-half of the minerals, and then reserving the excepted one-half of one-half. This passed the other one-half of one-half, or one-quarter, of the minerals to the Grantee.

**II. Alternatively, the trial court erred in granting Mustang's Motion for Summary Judgment because the Combest Deed is ambiguous.**

When interpreting a deed just as in interpreting a contract, the intent of the parties is to be determined from the express language found within the four corners of the document. *Garza v. Prolithic Energy Co., L.P.,* 195 S.W.3d 137,141 (Tex.App. – San Antonio 2006) (citing *Luckel v. White*, 819 S.W.2d 459, 461-63 (Tex. 1991); *Walker v. Foss*, S.W.2d 701, 704 (Tex.App.–San Antonio 1996, no writ)). Construction of an unambiguous deed is a question of law to be resolved by the court. *Id.* (citing *Luckel*, 819 S.W.2d at 461; *Walker*, 930 S.W.2d at 704). All parts of the deed are to be harmonized, construing the instrument to give effect to all of its provisions. *Id.* (citing *Luckel*, 819 S.W.2d at 462; *Walker*, 930 S.W.2d at 704).

However, if a written instrument remains reasonably susceptible to more than one meaning after the established rules of interpretation have been applied, then the instrument is ambiguous and extrinsic evidence is admissible to determine the true meaning of the instrument. *Gore Oil Company v. Roosth*, 158 S.W.3d 596, 599 (Tex.App.–Eastland 2005, no pet.) (citing *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc., supra; see Sun Oil Company (Delaware) v. Madeley,* 626 S.W.2d 726 (Tex. 1981); *Cherokee Water Company v. Forderhause,* 641 S.W.2d 522, 525 (Tex. 1982)) . "When a written instrument is determined to be ambiguous,

extrinsic evidence may be introduced to show the intent of the parties." *Id.* at 601 (citing *Smith v. Allison,* 157 Tex. 220, 301 S.W.2d 608, 612 (1956)).

As argued above, the only valid interpretation following Texas law results in at least some portion of the mineral estate granted to the Grantees. *See supra* Argument Part I. However, should a different interpretation of the Combest Deed be accepted as valid, we alternatively argue, that the Combest Deed was ambiguous on its face. The trial court should have then set the matter for trial and allowed the admission of parol and extrinsic evidence to explain the intent of the parties.

**III.    Defendant/Appellee Mustang Minerals, LLC's capacity as an unregistered foreign entity is a fact issue that made summary judgment in its favor improper.**

Appellee Mustang Minerals, LLC is a foreign entity that is not currently registered to do business in the State of Texas. It requested the trial court grant it a traditional motion for summary judgment under Rule 166(a) of the Texas Rules of Civil Procedure, alleging that there were no genuine issues of fact that would preclude summary judgment. However, at the hearing on September 2, 2015, Mountain Laurel's counsel at the time, Mr. Mandke, raised the issue of Mustang's

lack of registration with the Secretary of State as a preclusion to relief:

"And finally Your Honor, since this is a trespass to try title suit and the Defendant -- Mr. Rapp, Defendant's attorney admitted at our first hearing in this matter that [Mustang] has not registered in the State of Texas but is doing business in the State of Texas and is therefore, not entitled to affirmative relief in a trespass to try title suit, a take nothing judgment necessarily vest the defendant with a title to the property in question, and we contend that that is affirmative relief and they get the benefit of the Texas Court system without having paid the franchise taxes and are not entitled to a take nothing judgment." RR:12/15-RR/13/1.

Mustang's counsel, Mr. Rapp, responded with:

"I guess I'll start with refuting what I purportedly agreed to at the last hearing. I definitely did not agree that Mustang did not have the right to seek affirmative relief. What I did was withdraw the request in my Motion for Summary Judgment for affirmative relief because I had not pled for it in my motion and so I could not therefore, get it. *Just like any born individual in this state, we don't have to register to do business* and we have property rights here. *So Mustang is certainly entitled to ask the courts to enforce them without having to register to do business*. [emphasis added]" RR:13/6-RR:13/17.

Mustang's counsel did not deny that Mustang is a foreign entity that has not registered with the Texas Secretary of State and raised a fact issue as to Mustang's capacity to participate in the suit, let alone receive relief. Under Sec. 9.001 of the Texas Business Organizations Code, Defendant, a foreign Delaware Limited Liability Company with its principle offices in Shreveport, Louisiana, was required to register with the Texas Secretary of State in order to transact business within the State of Texas.

Further, under Sec. 9.051 (b) of the Texas Business Organizations Code,

Defendant is not permitted to "maintain an action, suit, or proceeding in a court of this state, … on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter."  A "foreign filing entity" is defined under Sec. 1.002 (29) as "a foreign entity,… that registers or is required to register as a foreign entity under Chapter 9 [of the Texas Business Organizations Code]."   Sec. 9.051 (c)(2) of the Texas Business Organizations Code provides that failure to register does not affect a foreign filing entity's ability to defend itself from suit.

It is apparent from the Texas Business Organizations Code that the purpose of registration of foreign entities is to prevent foreign entities from doing and profiting from business in Texas without paying franchise taxes and other fees and taxes owed to the state. Sec. 9.052 (a) demonstrates this notion, as it states:

> "(a)  A foreign filing entity that transacts business in this state and is not registered under this chapter is liable to this state for a civil penalty in an amount equal to all:
> (1)  fees and taxes that would have been imposed by law on the entity had the entity registered when first required and filed all reports required by law;  and
> (2)  penalties and interest imposed by law for failure to pay those fees and taxes."

A foreign filing entity, like a domestic entity which fails to pay its franchise taxes, is not permitted to have the advantages of all the immunities and rights of entities that are otherwise in good standing.

Mustang transacted business without registering with the Texas Secretary of State when it attempted to purchase the mineral interest in the Combest Deed. In fact, the underlying Trespass to Try Title suit is based upon that very transaction. However, a general denial or request for relief in a Trespass to Try Title suit is, by the nature of the suit, a request for relief and not a mere defense.

Toni Combest, when Chesapeake decided to stop paying her royalties, had no choice but to file a Trespass to Try Title suit. A Trespass to Try Title suit is the exclusive method by which litigants may receive a determination of title by the court in Texas:

> "TRESPASS TO TRY TITLE. (a) A trespass to try title action is *the method* of determining title to lands, tenements, or other real property.
> (b) The action of ejectment is not available in this state.
> [emphasis added]" TEX.PROP.CODE §22.001.

However, unlike other suits where a plaintiff being denied relief does not automatically mean the defendant receives relief, the result of a Trespass to Try Title suit is to vest title with the prevailing party. "If the plaintiff under the circumstances

fails to establish his title, the effect of a judgment of take nothing against him is to vest title in the defendant. The rule is a harsh one, but it also has been well established as a rule of land law in this State." *Hejl v. Wirth*, 343 S.W.2d 226 (Tex. – 1961) (citations omitted). This necessarily means that, unlike in other suits, a general denial and receiving a take-nothing judgment is affirmative relief for the defendant in a Trespass to Try Title suit, as if the defendant has asserted a counterclaim for title, not just a mere defense against the claims asserted.

"To determine whether a defendant's answer asserts a counterclaim or an affirmative defense, courts should analyze the facts alleged." *My-Tech, Inc. v. University of North Texas*, 166 S.W.3d 880, 884 (Tex. 2005) (citing *Flukinger v. Straughan*, 795 S.W.2d 779, 787 (Tex.App.-Houston [14th Dist.] 1990, writ denied). "We ask whether the defendant could have maintained the claim as an independent suit." *Id.* (citing *See id*.). "However, to determine if a defendant's prayer for general relief is a counterclaim or an affirmative defense, we look at the general purpose of the pleadings." *Id*. (citing *Thomason v. Sherrill*, 118 Tex. 44, 45, 10 S.W.2d 687, 687 (1928)). The purpose of a general denial in a Trespass to Try Title suit is to request a determination of title in one's favor by the very nature of the suit.

The effect of the take nothing judgment against the Toni Combest in the underlying case was to vest title in Mustang. Mustang is now able to file the judgment in the property records to give notice to the world of their rights in the

- 33 -

mineral property. However, the Texas Legislature did not imagine or envision that a foreign entity should be allowed to take advantage of the Texas Judicial system by waiting for Texans to file a necessary suit that they otherwise would not be able to file themselves, and then receive all the relief they seek thereby. Mustang sat on its heels and deliberately waited for Toni Combest and Mountain Laurel to file their Trespass to Try Title suit because it could not. To now allow Mustang to acquire a judgment granting it definite title when it could not have obtained such a judgment of its own initiative, is to allow Mustang to skirt the spirit and letter of the law and place it in a better position than the citizens of Texas.

The Trial Court should have denied Mustang's Motion for Summary Judgment and allow discovery to determine if Mustang is doing business in the State of Texas. Mustang, as far as we know, has acquired mineral property for the purpose of collecting royalty payments. In fact, this is the core issue surrounding this entire case: Mustang wants to get paid royalties. It is easy to imagine that Mustang, is substantially involved in several more such transactions in the State of Texas, receiving or attempting to receive hundreds of thousands, or even millions, of dollars of royalty income, and none of it is being paid to into the coffers of the State of Texas. If a domestic company doing such a business is required to file franchise taxes and pay its share in Texas, then a foreign entity should not be

allowed a higher privilege of dodging the payment of tax simply because it was formed in a different state.

Mustang's attorney, at a hearing dated September 2, 2015, did not deny that Mustang Minerals, LLC is a foreign entity doing business within the State of Texas without registering, as required by statute. In fact, Mustang's attorney further asserted that "like any person or individual born, a foreign corporation does not have to register to do business in the State of Texas." RR:13/12-RR:13/15. This statement is in clear opposition to the law. Thus, it would appear that Mustang Minerals, LLC did not have capacity to participate in the underlying suit for failure to register with the Secretary of State of Texas, and discovery should be permitted at least to the extent of ascertaining if Mustang is doing business in the State of Texas and is required to register. If it is the case that Mustang is doing business in the State of Texas without registering as the Business Organizations Code requires, then it cannot avail itself of the rights and privileges of domestic entity that is properly registered. Having title affirmatively determined in favor of a party is a privilege reserved for persons and entities in compliance with the laws of the State of Texas.

Should it be found that Mustang in fact is doing business within the State of Texas and is required to register, then Mustang's pleadings should all be stricken

from the record and Appellant should be allowed to move for default judgment against Mustang.

## CONCLUSION AND PRAYER

Texas Law is quite clear on the interpretation of reservations of interest, and the Appellant's pleadings were correct in claiming the Appellant had an interest in the Disputed Mineral Estate. The Trial Court was clearly in error and contravened well-established mineral law when it determined, erroneously, that the Appellant could not prevail on ANY of her claims by way of a take-nothing judgment. In accordance with Texas Law, as stated above, the Combest Deed must be read as conveying at least a one-fourth mineral interest to the Grantee. For these reasons, the Appellee's motion for summary judgment should have never been granted. Toni Combest respectfully asks this Court to:

1. reverse the District Court's Order partially granting Mustang Minerals, LLC's Motion for Summary Judgment and deny Mustang Minerals, LLC's Motion for Summary Judgment, and

2. reverse the denial of Plaintiff's and Intervenor's Motions for Summary Judgment and render a partial judgment in favor of Appellant on her Motion for Summary Judgment granting Appellant

an undivided one-quarter in and to the minerals underlying the tract of land described in the Combest Deed; or,

3. in the alternative, reverse the trial court's ruling and remand the case for further proceedings and allowance of extrinsic and parol evidence because the Combest Deed is ambiguous; or

4. in the alternative, reverse the trial court's ruling and remand for discovery on the issue of Appellee Mustang's capacity to participate in the underlying trespass to try title suit for doing business in Texas and failing to register with the Secretary of State.

Respectfully submitted,
Gilbert Mandke PLLC

/s/ Sameer Mandke /s/

Sameer Mandke
Texas State Bar No. 24065670
sameer@gkmpllc.com
Robert F. Gilbert
Texas State Bar No. 24059321
gilbert@gkmpllc.com
10100 Kleckley #15-B
Houston, TX 77075
Telephone: (832) 632-4886
Fax: (713) 341-9062


Kevin Schield
Attorney at Law

Texas Bar No. 24075026
Email: kevin.schield@schieldlaw.com
3611 Leadville Drive
Austin, Texas 78749
Telephone: (512) 910-5095

Attorneys for Appellant
Toni Combest

## CERTIFICATE OF COMPLIANCE

Based on a word count run on Microsoft Word 2013, this brief contains 7,745 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

/s/Sameer Mandke/s/
Sameer Mandke

## CERTIFICATE OF SERVICE

On November 25, 2015, I electronically filed this Brief of Appellant with the Clerk of Court using the electronic filing system which will send notification of such filing to the following:

Eggleston King, LLP
David Rapp
Texas Bar No. 24027764
Brett F. Gunter
Texas Bar No. 24041023
102 Houston Avenue
Weatherford, TX 76086
Phone: 817.596.4200
Fax:    817.596.4269
Email:      david@ektexas.com
Attorneys for Appellee Mustang Minerals, LLC

/s/Sameer Mandke/s/
Sameer Mandke

# APPENDIX

| TAB | ITEM |
|-----|------|
| 1 | "Combest Deed" - Warranty Deed dated September 18, 2003, recorded in Volume 436, Page 5 of the Property Records of La Salle County, Texas, from Horace and Inga Combest, husband and wife, to Preston and Toni Combest, husband and wife (CR:64) |
| 2 | "Source Deed A" - Warranty Deed from Lottie Edna Burton to Horace Edwin Combest and wife, Inga Mable Combest, dated November 28, 1967, recorded in Volume 145, Page 105, of the Property Records of La Salle County (CR:66-67) |
| 3 | "Source Deed B" - Warranty Deed from Robert L. Burton and wife, Ann M. Burton, to Horace Edwin Combest and wife, Inga Mable Combest, dated November 28, 1967, recorded in Volume 145, Page 107, of the Property Records of La Salle County (CR:69-70) |
| 4 | "Source Deed C" - Warranty Deed from Mrs. Charles L. Cunningham, to Horace Edwin Combest and wife, Inga Mable Combest, dated November 21, 1968, recorded in Volume 151, Page 94, of the Property Records of La Salle County (CR:72-73) |
| 5 | Trial Court's Order and Judgment against Mountain Laurel on June 22, 2015 (CR:159-161) |
| 6 | Trial Court's Order and Judgment against Appellant on September 2, 2015 (CR:201) |
| 7 | Statements by Mountain Laurel's and Mustang's Counsel at Hearing on September 2, 2015 (RR:12-13) |

*Sharp v. Fowler*, 252 S.W.2d 153 (Tex. 1952)

*Averyt v. Grande,* 717 S.W.2d 891, 893 (Tex. 1986)

*Hooks v. Neil*, 21 S.W.2d 532 (Tex.Civ. App.—Galveston 1919, writ ref'd)

*King v. National Bank of Wichita Falls*, 144 Tex. 583, 192 S.W.2d 260 (1946)

Tex. Prop. Code §22.001

Tex. Bus. Org. Code §9.051

Tex. Bus. Org. Code §9.052

Tex. Bus. Org. Code §1.002 (29)

# WARRANTY DEED

74430

**Date:** September 18, 2003

**Grantor:** Horace Combest and wife Inga Combest

**Grantor's Mailing Address (including county):**
132 CR 1219
Pittsburg, Camp County, Texas 75686

**Grantee:** Preston Combest and wife Toni Combest

**Grantee's Mailing Address (including county):**
100 CR 1219
Pittsburg, Camp County, Texas 75686

**Consideration:** TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

**Property (including any improvements):** Property situated in LaSalle County, Texas, being in the ABST 959 SUR 62 J T Beauregard Survey, Tracts 9, 10, 23, & 24, AB Blk: 0959, Lot 0062, 80 (eighty) acres of land.
The grantor herein, Horace Combest, and Inga Combest excepts from this conveyance and reserves unto themselves, their heirs and assigns an undivided one-half (1/2) interest in and to all of the oil, gas, and/or other minerals.

**Reservations from and Exceptions to Conveyance and Warranty:**
1. Any and all easements for utilities or rights-of-way, whether public or apparent.
2. Any easements, rights-of-way, prescriptive rights, whether of public record or not; all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances, and other instruments, and other liens and conveyances that affect the property; rights of adjoining owners in any walls and fences situated on a common boundary; and discrepancies, conflicts, or shortages in area or boundary lines; any encroachments or overlapping of improvements.
3. Title to oil, gas, and other minerals on and under the property, together with all rights of ingress and egress, heretofore transferred or reserved by predecessors.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold unto Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor hereby binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and heirs, executors, administrators, successors, and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to warranty.

When the context requires, singular nouns and pronouns include the plural.

_Horace Combest_
HORACE COMBEST

_Inga Combest_
INGA COMBEST

STATE OF _TEXAS_
COUNTY OF _CAMP_
This instrument was acknowledged before me on the _18th_ day of September, 2003 by HORACE COMBEST AND INGA COMBEST.

_Vicki Petree_
Notary Public
Notary's name (printed): Vicki Petree
Notary's commission expires: 3-22-2007

**AFTER RECORDING RETURN TO:**
PRESTON COMBEST
100 CR 1219
Pittsburg, Texas 75686

VOL. 4 3 6 PAGE 5


VICKI PETREE
Notary Public
STATE OF TEXAS
My Comm. Exp. 3-22-2007

FILED: _October 7, 2003_ AT _9:35A_ M.
RECORDED: _October 8, 2003_ AT _11:30A_ M.

PEGGY MURRAY, COUNTY CLERK
LA SALLE COUNTY, TEXAS
BY: _Margarita A. Saucedo_ DEPUTY

Deed

**THE STATE OF TEXAS** }

**COUNTY OF** LA SALLE }

**KNOW ALL MEN BY THESE PRESENTS:**

**THAT** LOTTIE EDNA BURTON (also known as Edna H. Burton), Individually and as Independent Executrix of the Estate of Jessie L. Burton, Deceased

of Nueces County, Texas , in consideration of the sum of

TEN AND NO/100----------------------------------------------DOLLARS ($ 10.00 ), CASH, and other good and valuable considerations,

to said grantor in hand paid by the grantee s hereinafter named, the receipt of which is hereby

acknowledged, have GRANTED, SOLD and CONVEYED and by these presents do GRANT, SELL

and CONVEY unto HORACE EDWIN COMBEST and wife, INGA MABLE COMBEST,

of Nueces County, Texas, all that certain property situated in La Salle

County, Texas, described as follows, to-wit:

Tract Nine (9), Section Sixty Two (62), GARDENDALE COLONY LANDS, according to map or plat recorded in Vol. "U", Page 135, Deed Records of La Salle County, Texas, and containing twenty (20) acres of land.

SUBJECT TO: A strip ten feet wide where tract touches section and/or half-section lines reserved for road purposes.

There is excepted from the property herein conveyed and the warranty herein given, and reserved to the Grantor herein, her heirs and assigns, one-half of all oil, gas and other minerals of whatsoever character (the naming of oil and gas shall in no way limit the term "minerals") in and under the premises hereinabove described.

This conveyance is made subject to the following matters to the extent same are in effect at this time: Any and all restrictions, covenants, conditions and easements, if any, relating to the hereinabove described property, but, only to the extent they are still in effect and shown of record in the hereinabove mentioned County and State.

TO HAVE AND TO HOLD the said premises, together with all rights, hereditaments and appurtenances thereto belonging, unto the said grantee s above named, their heirs and assigns forever. And

I do hereby bind myself, my heirs, executors and administrators to WARRANT AND FOREVER DEFEND the title to said property unto the said grantee s above named, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

EXECUTED this 28th day of November, 1967.

_Lottie Edna Burton_
LOTTIE EDNA BURTON (also known as Edna H. Burton), a widow, Indiv. and as Indep. Executrix of Est. of Jessie L. Burton, Deceased

VOL **145** PAGE **105**

STATE OF TEXAS
COUNTY OF NUECES                                    LOTTIE EDNA BURTON (also known
                                                    as Edna H. Burton), a widow,
    Before me, the undersigned authority, on this day personally appeared
Indiv. and as Indep. Executrix of the estate of Jessie L. Burton, Deceased
known to me to be the person    whose name is    subscribed to the foregoing instrument, and acknowledged to me that
    she    executed the same for the purposes and consideration therein expressed., and in the capacity therein
stated.
    Given under my hand and seal of office, this  30th  day of  November, 1967.

                                        Notary Public,          Nueces          County, Texas.
                    PEGGY JOHNSON

STATE OF TEXAS
COUNTY OF
    Before me, the undersigned authority, on this day personally appeared
                                    , wife of
known to me to be the person whose name is subscribed to the foregoing instrument, and having been examined by me privily
and apart from her husband, and having the same fully explained to her, she, the said
                            acknowledged such instrument to be her act and deed, and declared that she had willingly
signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.
    Given under my hand and seal of office, this                 day of

                                        Notary Public,                            County, Texas.

STATE OF TEXAS
COUNTY OF
    Before me, the undersigned authority, on this day personally appeared
                        and
wife of the said
the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same
for the purposes and consideration therein expressed. And the said
                        , having been examined by me privily and apart from her husband, and having the same fully
explained to her, she, the said                                           , acknowledged such
instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration
therein expressed, and that she did not wish to retract it.
    Given under my hand and seal of office, this                 day of

                                        Notary Public,                            County, Texas.

General Warranty Deed

18023

LOTTIE EDNA BURTON

TO

HORACE EDWIN COMBEST ET UX

FILED FOR RECORD
AT / O'CLOCK ___ M.
DEC 5 1967
GEO. E. COOK,
COUNTY CLERK, LA SALLE COUNTY, TEXAS
BY _____ DEPUTY

ROBERT E. HAEGELIN
ATTORNEY

Mr. Horace E. Combest
3605 Cottonwood
Return to Corpus Christi, Texas 78411

FORM 128
FRED F. HUNTER
GALVESTON, TEXAS

FILED:   December 5, 1967         AT 1:00 P. M.    GEO. E. COOK, COUNTY CLERK
RECORDED: December 7, 1967        AT 9:00 A. M.    LA SALLE COUNTY, TEXAS
                                                  BY: Nora Mae Tyler DEPUTY

VOL 145 PAGE 106

067

Deed

18024  Indexed)

THE STATE OF TEXAS }
COUNTY OF LA SALLE }  KNOW ALL MEN BY THESE PRESENTS:

THAT    ROBERT L. BURTON and wife, ANN M. BURTON,

of      Nueces County, Texas                    , in consideration of the sum of

TEN AND NO/100                            DOLLARS ($   10.00      ),
CASH and other good and valuable considerations

to said grantor s  in hand paid by the grantee  s  hereinafter named, the receipt of which is hereby

acknowledged, have GRANTED, SOLD and CONVEYED and by these presents do     GRANT, SELL

and CONVEY unto    HORACE EDWIN COMBEST and wife, INGA MABLE COMBEST,

of    Nueces        County, Texas, all that certain property situated in    LaSalle

County, Texas, described as follows, to-wit:

  Tract Numbered Ten (10), Section numbered Sixty-Two (62),GARDENDALE
  COLONY LANDS, LaSalle County, Texas,according to plat recorded in
  Vol."U",page: 135,Deed Records,LaSalle County, Texas, and containing
  twenty (20) acres of land.

  Subject to a strip ten (10) ft.wide,where tract touches Section
  and/or Half-Section lines, reserved for road purposes.

  There is excepted from the property herein conveyed and the warranty
  herein given and reserved to grantors herein,their heirs and assigns,
  one-half (1/2) of all of the oil,gas and other minerals of whatsoever
  character,the naming of oil and gas shall in no way limit the term
  minerals, in and under the premises hereinabove described.

  This conveyance is made subject to the following matters, to the
extent same are in effect at this time:Any and all restrictions,covenants,
conditions and easements relating to the above described property,but
only to the extent they are still in effect,shown of record in above
mentioned County and State, and to all zoning laws,regulations and
ordinances of municipal and/or other governmental authorities, if any,
but only to the extent they are still in effect,relating to the above
described property.

    TO HAVE AND TO HOLD the said premises, together with all rights, hereditaments and appurte-

nances thereto belonging, unto the said grantee s above named, their  heirs and assigns forever. And

we      do hereby bind ourselves ,ourheirs, executors and administrators to WARRANT AND

FOREVER DEFEND the title to said property unto the said grantee s   above named,   their

heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any

part thereof.

    EXECUTED this    28th day of NOVEMBER,1967.

_____          _Robert L Burton_
                                   ROBERT L. BURTON
_____          _Ann M. Burton_
                                   ANN M. BURTON

              VOL  145 PAGE 107

STATE OF TEXAS }
COUNTY OF

Before me, the undersigned authority, on this day personally appeared

known to me to be the person      whose name      subscribed to the foregoing instrument, and acknowledged to me that
    he      executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, this          day of

_____
Notary Public,                                                                    County, Texas.

STATE OF TEXAS }
COUNTY OF

Before me, the undersigned authority, on this day personally appeared
                                                        , wife of
known to me to be the person whose name is subscribed to the foregoing instrument, and having been examined by me privily
and apart from her husband, and having the same fully explained to her, she, the said
                                    acknowledged such instrument to be her act and deed, and declared that she had willingly
signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

Given under my hand and seal of office, this          day of

_____
Notary Public,                                                                    County, Texas.

STATE OF TEXAS }
COUNTY OF   NUECES

Before me, the undersigned authority, on this day personally appeared        ROBERT L. BURTON
                              and        ANN M. BURTON
                                                                , personally known to me to be
wife of the said      ROBERT L. BURTON
the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same
for the purposes and consideration therein expressed. And the said        ANN M. BURTON
                                  , having been examined by me privily and apart from her husband, and having the same fully
explained to her, she, the said        ANN M. BURTON                        , acknowledged such
instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration
therein expressed; and that she did not wish to retract it.

Given under my hand and seal of office, this  30th  day of    NOVEMBER, 1967.

_____Peggy Johnson_____
Notary Public,            Nueces                              County, Texas.
PEGGY JOHNSON

18024

**General Warranty Deed**

ROBERT L. BURTON et ux

TO

HORACE EDWIN COMBEST et ux

FILED FOR RECORD
AT ____ O'CLOCK __ P __ M.
DEC 5 1967
GEO. E. COOK,
COUNTY CLERK, LA SALLE COUNTY, TEXAS
BY: _____
Pd. Cash

Return to ........ Mr. Horace E. Combest
3605 Cottonwood
Corpus Christi, Texas 78411

FORM 12B
FRED F. HUNTER
GALVESTON, TEXAS

FILED: December 5, 1967          AT 1:00 P. M.   GEO. E. COOK, COUNTY CLERK
RECORDED: December 7, 1967        AT 9:00 A. M.   LA SALLE COUNTY, TEXAS
                                                  BY: _____ DEPUTY

VOL 145 PAGE 108

**THE STATE OF TEXAS** }

**COUNTY OF**    LA SALLE }    **KNOW ALL MEN BY THESE PRESENTS:**

. **THAT**    MRS. CHARLES L. CUNNINGHAM, a widow, also known as Frances Wilkins Cunningham, individually and as executrix under the will of Charles L. Cunningham, deceased

of    Bellaire, Texas    , in consideration of the sum of

TEN AND NO/100----------------------------------------------- DOLLARS ($10.00    ), CASH, and other good and valuable considerations

to said grantor    in hand paid by the grantee    hereinafter named, the receipt of which is hereby acknowledged, have GRANTED, SOLD and CONVEYED and by these presents do    GRANT, SELL and CONVEY unto    HORACE COMBEST

of    Nueces    County, Texas, all that certain property situated in    La Salle County, Texas, described as follows, to-wit:

> Tracts No. Twenty Three (23) and Twenty Four (24), Section Sixty Two (62), GARDENDALE COLONY LANDS, La Salle County, Texas, according to plat recorded in Vol. U, Page 135, La Salle County Deed Records.

This conveyance is made subject to the following matters, to the extent same are in effect at this time: Any and all restrictions, covenants, conditions and easements, if any, relating to the hereinabove described property, but only to the extent they are still in effect and shown of record in the hereinabove mentioned County and State.

There is excepted from the property herein conveyed and the warranty herein given and reserved to Grantor herein, her heirs, successors and assigns, one-half of all of the oil, gas and other minerals of whatsoever character (the naming of oil and gas shall in no way limit the term "minerals") in and under the premises hereinabove described.

TO HAVE AND TO HOLD the said premises, together with all rights, hereditaments and appurtenances thereto belonging, unto the said grantee   above named,   his   heirs and assigns forever. And

   I    do hereby bind myself, my    heirs, executors and administrators to WARRANT AND FOREVER DEFEND the title to said property unto the said grantee    above named, his

heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

   EXECUTED this 21st day of November, 1968.

_Mrs. Charles L. Cunningham_
MRS. CHARLES L. CUNNINGHAM, indiv. and and as executrix under the will of Charles L. Cunningham, deceased

STATE OF TEXAS

COUNTY OF *HARRIS*　　　　　}　　　　　　　　　　MRS. CHARLES L. CUNNINGHAM, a widow, also known as Frances Wilkins Cunningham, Indiv. and as executrix under the Will of Charles L. Cunningham, Deceased

Before me, the undersigned authority, on this day personally appeared

known to me to be the person　　whose name　is subscribed to the foregoing instrument, and acknowledged to me that she　　　　　the same for the purposes and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office, this　　4th　day of　DECEMBER November, 1968.

Notary Public.　　　　　　　　　　　　　　　　　　County, Texas.

STATE OF TEXAS

COUNTY OF　　　　}

Before me, the undersigned authority, on this day personally appeared

, wife of

known to me to be the person whose name is subscribed to the foregoing instrument, and having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said　　　　　　acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

Given under my hand and seal of office, this　　　　day of

Notary Public,　　　　　　　　　　　　　　County, Texas.

STATE OF TEXAS

COUNTY OF　　　　}

Before me, the undersigned authority, on this day personally appeared　　and

wife of the said　　　　　　　　　　　　　　　　　　, personally known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed. And the said　　　　　　　　　　, having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said　　　　　　　　　　　　　　　　　　　　, acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

Given under my hand and seal of office, this　　　　day of

Notary Public,　　　　　　　　　　　　　　County, Texas.

19197

## General Warranty Deed

MRS. CHARLES L. CUNNINGHAM

TO

HORACE COMBEST

FILED FOR RECORD

AT 8:30 O'CLOCK A. M.

DEC 18 1968

GEO. E. COOK
COUNTY CLERK, LA SALLE COUNTY, TEXAS
BY　　　　　　DEPUTY

ROBERT E. HAEGELIN
ATTORNEY

Return to:
Mr. Horace Combest
3605 Cottonwood
Return to Corpus Christi, Texas
78411

RM 12B
F. HUNTER
STON, TEXAS

FILED: December 18, 1968　　　AT 8:30 A.M.　　GEO. E. COOK, COUNTY CLERK
RECORDED: December 19, 1968　　AT 8:30 A.M.　　LA SALLE COUNTY, TEXAS
　　　　　　　　　　　　　　　　　　　　　　　BY:　　　　　　　　　DEPUTY

VOL 151 PAGE 95

NO. 14-08-00144-CVL

| MOUNTAIN LAUREL MINERALS, LLC, | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 218th JUDICIAL DISTRICT |
| | § | |
| MUSTANG MINERALS, LLC, | § | |
| | § | |
| Defendant. | § | LA SALLE COUNTY, TEXAS |

## ORDER

On January 29, 2015, the Court heard Plaintiff's Motion for Summary Judgment, joined by Intervenor, and Defendant Mustang Minerals, LLC's Motion for Summary Judgment. After considering the pleadings, the Summary Judgment Motions and Responses, the evidence and argument of counsel, the Court finds that Plaintiff's Motion for Summary Judgment should be, in all things, DENIED. The Court further finds, as a matter of law, that, as neither Plaintiff nor Intervenor can prevail on any of its claims against Defendant, under any theory pled in this lawsuit, Defendant Mustang Minerals, LLC's Motion for Summary Judgment should, therefore, be GRANTED, IN PART, and judgment be entered as set forth herein below:

IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion for Summary Judgment, along with Intervenor's joinder therein, is hereby Denied.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant Mustang Minerals, LLC's Motion for Summary Judgment is hereby Granted, in part, in that Defendant shall have and recover a take nothing judgment against Plaintiff Mountain Laurel Minerals, LLC, with respect to all of Plaintiff's claims and requests for relief brought against Defendant in this lawsuit. All other relief sought in Defendant's Motion for summary Judgment is hereby denied.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all costs of court are and shall be taxed against the party incurring the same.

SIGNED this _22_ day of June, 2015.

Donna S. Rayes
JUDGE PRESIDING

FILED FOR RECORD
At _7:10_ o'clock _A_ M.

JUN 3 0 2015

MARGARITA A. ESQUEDA
COUNTY & DISTRICT CLERK
LA SALLE COUNTY, TEXAS
BY_____ DEPUTY

# 81ST JUDICIAL DISTRICT
## DONNA S. RAYES
### DISTRICT JUDGE

PHONE (830) 769-3572
#1 COURTHOUSE CIRCLE DRIVE • SUITE 206
JOURDANTON, TX 78026
FAX (830) 769-2841
dcourt81_218@yahoo.com

David D. Rapp
Eggleston King, LLP
102 Houston Avenue
Weatherford, Texas 76086
Fax: 817.596.4269

Sameer Mandke
Gilbert Mandke, PLLC
10100 Klccklcy #15-B
Houston, Texas 77075
Fax: 682.970.3988

Andrew G. Pate
Nix, Patterson & Roach, LLP
205 Linda Drive
Daingerfield, Texas 75638
Fax: 903.645.4415

June 22, 2015

**In Re: Mountain Laurel Minerals, LLC vs. Mustang Minerals, LLC;** *Cause No. 14-08-00144-CVL*

Dear Counsel,

Enclosed please find a copy of the order of the Court in regard to Plaintiff's and Defendant's Motions for Summary Judgment. The original has been sent to the clerk for filing.

Yours truly,

Donna S. Rayes
81st District Judge

Enc. 1

CAUSE NO. 14-08-00144-CVL

| | | |
|---|---|---|
| MOUNTAIN LAUREL MINERALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 218th JUDICIAL DISTRICT |
| | § | |
| MUSTANG MINERALS, LLC, | § | |
| | § | |
| Defendant. | § | OF LA SALLE COUNTY, TEXAS |

## ORDER

On September 2, 2015, the Court heard Defendant Mustang Minerals, LLC's Motion for Summary Judgment as to Intervenor's Claims. After considering the pleadings, the summary judgment evidence, and the arguments of counsel, the Court finds that Defendant's Motion for Summary Judgment as to Intervenor's Claims should be, in all things, GRANTED.

IT IS, THEREFORE, ORDERED, ADJUGED, AND DECREED that Defendant Mustang Minerals, LLC's Motion for Summary Judgment is hereby GRANTED, in all things, and that Defendant shall have and recover a take nothing judgment against Intervenor Tony Combest with respect to all of Intervenor's claims and requests for relief brought against Defendant in this lawsuit.

IT IS FURTHER ORDERED, ADJUGED, AND DECREED that all costs of court are and shall be taxed against the party incurring the same.

SIGNED this 2 day of September, 2015.

FILED FOR RECORD
At 7:20 o'clock A.M.
SEP 9 2015
MARGARITA ESQUIDA
LA SALLE COUNTY, CLERK
BY DEPUTY

_____
JUDGE PRESIDING

Approved as to form:

_____
David Papp, Atty for Defendant

VOL. 102 PAGE 156

_____

Courtney Anne Harris
Courtney Anne Harris, Atty for Intervenor

201

Sameer Mandke,
Atty for Plaintiff

ORDER
PAGE SOLO

property subject to all these other interests which includes the Grantors attempted reservation. One thing that's distinct is, of course, the Grantor hasn't included the words "reserving an undivided one-half interest from the above described property." The statement is "only one-half undivided interest in all the oil and gas and other minerals." Of course when we get to the point where we're determining the Grantors reservation, if we accept that that general language regarding other interests, prior interests is valid -- which we contend it's not -- well, now you have the surface, plus, whatever the Grantors owned in the minerals. So at best they could have only reserved what they owned -- half of what they owned at the time.

And finally Your Honor, since this is a trespass to try title suit and the Defendant -- Mr. Rapp, Defendant's attorney admitted at our first hearing in this matter that the Defendant has not registered in the State of Texas but is doing business in the State of Texas and is therefore, not entitled to affirmative relief in a trespass to try title suit, a take nothing judgment necessarily vest the defendant with a title to the property in question, and we contend that that is affirmative relief and they get the benefit of the Texas Court system without having paid the franchise taxes and

are not entitled to a take nothing judgment.

For all those reasons we pray that you reconsider your prior ruling and reinstate your initial ruling. Thank you.

THE COURT: All right. Your response.

MR. RAPP: I guess I'll start with refuting what I purportedly agreed to at the last hearing. I definitely did not agree that Mustang did not have the right to seek affirmative relief. What I did was withdraw the request in my Motion for Summary Judgment for affirmative relief because I had not pled for it in my motion and so I could not therefore, get it. Just like any born individual in this state, we don't have to register to do business and we have property rights here. So Mustang is certainly entitled to ask the courts to enforce them without having to register to do business.

I wanted to respond briefly that the deed in Duhig did not contain a reservation and exception clause, nor did it have a "subject to" language. The whole Duhig Doctrine applies when there's a failure to title. A failure cannot occur when there is "subject to" limiting language. When it's more than what you are conveying, and when you have "subject to" language in your deed saying, hey, we're conveying this subject to

**Page 153**
**252 S.W.2d 153**
**151 Tex. 490**
**SHARP**
**v.**
**FOWLER et ux.**
**No. A-3662.**
**Supreme Court of Texas.**
**Nov. 5, 1952.**

[151 Tex. 491] LeRoy LaSalle and Thos. H. Sharp, Carthage, for petitioner.

Long & Strong, Carthage, Steve Miller, Tyler, Ghent Sanderford, Austin, for respondents.

[151 Tex. 492] HICKMAN, Chief Justice.

This suit was brought by petitioner against respondents in the form of an action in trespass to try title to an undivided 1/4th mineral interest in a 29.7-acre tract of land in Panola County. A trial before the court sitting without a jury resulted in a judgment that petitioner take nothing, which judgment was affirmed by the Court of Civil Appeals. 248 S.W.2d 322. Petitioner's claim of title comes through a deed from the heirs of A. D. Cockrell, and respondents' claim of title comes through a prior deed from the administrator of Cockrell's estate to their predecessor in title. If the administrator's deed was effective to pass the 1/4th mineral interest along with the surface of the land to respondents' predecessor in title, there is no basis for petitioner's claim.

A brief recital of the transactions leading up to this controversy is necessary to an understanding of the precise question before us for decision. On February 4, 1935, Frost Lumber Industries, Inc. (hereinafter referred to as Frost), conveyed to A. D. Cockrell 50 acres of land, being a 20.3-acre tract out of the John Simpson Survey (not involved in this suit), and the 29.7-acre tract out of the Texas Central Railway Survey No. 13 involved in this suit. Each tract was described by metes and bounds. The minerals in the 29.7-acre tract belonged at that time to Louis Werner Sawmill Company (hereinafter referred to as Werner), and they were excepted from the grant in the Frost deed. On September 10, 1935,

Page 154

Werner conveyed those minerals to Frost, who, in turn, by deed dated September 16, 1935, conveyed them to Cockrell. Thereafter, Cockrell conveyed away 3/4ths of those minerals, with the result that at the time of his death he had title to the surface and an undivided 1/4th interest in the minerals in the 29.7-acre tract.

On July 17, 1939, A. A. Jordan, as administrator of the estate of A. D. Cockrell, deceased, conveyed the 29.7-acre tract to J. A. Browning, respondents' predecessor in title. In that deed the land was described as follows:

'50 acres of land situated in Panola County, Texas, and being [151 Tex. 493] 20.3 acres of the John Simpson Headright Survey, and 29.7 acres of the T. C. Railway Company No. 13, and being the same land described in a deed from Frost Lumber Industries, Inc. of Texas, to A. D. Cockrell, dated the 4th day of February, A. D. 1935, and of record in Vol. 102, page 462, Deed Records, Panola County, Texas.'

The sole question for decision is whether the grant of land in the Jordan deed, which normally would include both the surface and the minerals, was limited to the surface only by virtue of the reference for



description to the Forst deed, in which all of the minerals were excepted and only the surface conveyed. Stated in other language, the question is: Did the reference to the Frost deed operate to qualify the estate conveyed and in effect reserve the 1/4th mineral interest to the Cockrell estate, or did that reference serve only to define the area and boundaries of the land conveyed? Both courts below held that the reference in the Jordan deed to the Frost deed was merely descriptive of the boundaries of the land conveyed and did not serve to except the 1/4th mineral interest from the grant or reserve it to the grantor. Their conclusions were based upon the broad ground that a deed passes whatever interest a grantor has in the land, in the absence of Language showing an intention to grant a less estate. That is a sound elementary principle of conveyances. Our inquiry, then, is limited to the question of whether words were used in the Jordan deed which show an intention to convey an interest less than that owned by the Cockrell estate.

Analyzing the description in that deed, it will be observed in the first place that it contains a grant of 'land.' That is a term which on its face includes the minerals in and under the land. The broad scope of the meaning of the word 'land' is well illustrated by our decision in Holloway's Unknown Heirs v. Whatley, 133 Tex. 608, 131 S.W.2d 89, 123 A.L.R. 843. Following the grant there is designated the number of acres granted and the county and survey in which the land is located. That language, standing alone, is insufficient to constitute a legal description of the land. Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703; Admas v. Duncan, 147 Tex. 332, 215 S.W.2d 599. But the description is made certain by the language 'being the same land described in' the Forst deed. To describe land is to outline its boundaries so that it may be located on the ground, and not to define the estate conveyed therein. It is to be observed that the reference in the Jordan deed is not to the land conveyed [151 Tex. 494] in the Frost deed but to the land described in that deed. (Italics ours.)

A reservation of minerals to be effective must be by clear language. Courts do not favor reservations by implication. Sellers v. Texas Central Ry. Co., 81 Tex. 458, 17 S.W. 32, 13 L.R.A. 657; State v. Black Bros., 116 Tex. 615, 297 S.W. 213, 53 A.L.R. 1181. The most that could be said of the reference to the Frost deed for description of the land conveyed by the Jordan deed is that it carried the bare implication that only the surface was being conveyed. That implication, if in fact it be one, should not be held to overcome the unconditional grant of land expressed in other language in that deed, and limit that grant to the surface of the land. From a consideration of the Jordan deed in all its parts, it is our conclusion that its language evidences no intention to reserve the 1/4th mineral interest owned by the Cockrell estate.

Much of the argument in the briefs is centered around three cases: Duhig v.

Page 155

Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878, affirming the Court of Civil Appeals opinion in 119 S.W.2d 688; Winters v. Slover, Tex.Sup., 251 S.W.2d 726; and Coffee v. Manly, Tex.Civ.App., 166 S.W.2d 377, error refused. Each of those cases is distinguishable from the instant case. It is unnecessary to point out all of the grounds of distinction, but this obvious one applies to all three cases: The Jordan deed contains but one adequate description of the boundaries of the land; that is the description supplied by the reference to the Frost deed; whereas, each of the other deeds contains both a particular description and a general description, and there was some question as to which description should prevail. Although distinguishable, the Duhig case announces principles which support our conclusion above announced.

The case is affirmed.



**Page 891**
**717 S.W.2d 891**
**James R. AVERYT, Individually and as Trustee for R.M.**
**Hopkins, Jr., Petitioner,**
**v.**
**GRANDE, INC., Respondent.**
**No. C-4009.**
**Supreme Court of Texas.**
**July 2, 1986.**
**Rehearing Denied Nov. 5, 1986.**

**Page 892**

Christie Condara, Krist, Kinney, Pucket & Riedmueller, Houston, for petitioner.

William J. Ehlert, Spinn, Ehlert, Spinn, Weisler & Weisler, Brenham, for respondent.

SPEARS, Justice.

The issue in this declaratory judgment action is whether a mineral reservation in a general warranty deed reserves a fraction of the entire mineral estate or only a fraction of the undivided one-half mineral interest owned and conveyed by the grantor. The trial court held that the reservation reserved a fraction of the entire mineral estate. The court of appeals affirmed. 686 S.W.2d 632. We affirm.

On September 30, 1977, Respondent Grande, Inc. conveyed the real property in question to the Fogelmans. The Fogelmans then conveyed the property to Petitioner James R. Averyt, trustee for R.M. Hopkins, Jr. Averyt, individually and as Hopkin's trustee, sued to determine what portion of the mineral interest Grande conveyed to the Fogelmans.

The Grande to Fogelman deed contains the following pertinent provisions:

[T]hat Grande, Inc. ... have GRANTED, SOLD and CONVEYED, ... unto the said Gordon V. Fogelman and wife, Clarice E. Fogelman, ... the following described real estate:

FIRST TRACT:

All that certain tract or parcel of land, situated in Fayette County, Texas, ....

....

[C]ontaining 86.82 acres of land.

SECOND TRACT:

An undivided 1/2 interest in and to all that certain tract or parcel of land, situated in Fayette County, Texas, ....

....

[C]ontaining 0.03 acres of land.



LESS, HOWEVER, AND SUBJECT TO an undivided 1/2 interest in the oil, gas, sulphur, and all other minerals, described in that deed from Rubie Keilers and Annie Keilers, to Texas Osage Cooperative Royalty Pool, et al, dated May 2, 1930, and recorded in Volume 152, Pages

Page 893

75-76, Deed Records of Fayette County, Texas.

....

There is hereby excepted from this conveyance and reserved to Grantor, its successors and assigns, an undivided 1/4th of the royalty covering all of the oil, gas and other minerals, including but not limited to uranium, coal, lignite, iron, gold, silver, and all other minerals, whether or not now known to be valuable and whether by drilling, strip mining, or any other method, in, to and under or that may be produced from the lands above described....

....

TO HAVE AND TO HOLD the above described premises, together with all and singular, the rights and appurtenances thereto in any wise belonging unto the said Gordon V. Fogelman and wife, Clarice E. Fogelman, their heirs and assigns, forever. And Grande, Inc., does hereby bind itself and its successors, to warrant and forever defend, all and singular, the said premises unto the said Gordon V. Fogelman and wife, Clarice E. Fogelman, their heirs and assigns, against every person whomsever lawfully claiming, or to claim the same or any part thereof. (emphasis added)

The question presented is whether Grande reserved one-fourth of the royalty from the entire 86.82 and 0.003 acres or one-fourth of the royalty from the undivided one-half mineral interest Grande owned at the time of the conveyance. Grande argues that the deed reserves one-fourth of the royalty of the entire mineral estate. Averyt argues that the deed reserves one-fourth of the royalty only from the undivided one-half mineral interest Grande owned at the time of the conveyance to the Fogelmans.

Because neither party contends that the deed is ambiguous, we construe the language of the deed to ascertain the intent of the parties without considering parol evidence. Middleton v. Broussard, 504 S.W.2d 839 (Tex.1974). Courts give legal meaning to the language of the deed by construing all of its provisions in harmony and only if deed provisions irreconcilably conflict, apply one provision to the exclusion of another. Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166 (1953).

Specific rules of construction apply to cases in which a grantor owns an undivided mineral interest and reserves a fraction of the minerals under the land in the deed. If the deed reserves a fraction of the minerals under the land conveyed, then the deed reserves a fraction of the part of the mineral estate actually owned by the grantor and conveyed in the deed. Hooks v. Neill, 21 S.W.2d 532 (Tex.Civ.App.--Galveston 1929, writ ref'd). In Hooks, the grantor conveyed all of his undivided one-half interest in a tract of land. He then reserved "a one-thirty second part of all oil on and under the said land and premises herein described and conveyed." The Hooks court focused on the word "conveyed" to hold that the reservation clause applied "only to the interest which [grantors] have in the land and ore which they conveyed." Hooks, 21 S.W.2d at 538.

If, on the other hand, the deed reserves a fraction of the minerals under the land described, the deed reserves a fraction of the minerals under the entire physical tract, regardless of the part of the mineral



estate actually conveyed. King v. First National Bank of Wichita Falls, 144 Tex. 583, 192 S.W.2d 260 (1946). In King, the grantor conveyed all of his undivided one-half interest in the described land. The deed later reserved "an undivided one eighth of the usual and customary one eighth royalty ... in oil and gas and other minerals that may be produced from the hereinabove described land." This court focused on the word "described" to hold that the grantor reserved an undivided one eighth of the royalty from the minerals under the entire described tract, not just the grantor's undivided one-half. King, 192 S.W.2d at 262. We distinguished Hooks on the basis that the deed in that case limited the reservation to part of the estate conveyed while the King deed contained

Page 894

no such restricting language. Id. See Masterson, Double Fraction Problems In Instruments Involving Mineral Interests, 11 Southwestern L.J. 281, 281 (1957) (disapproves distinction but states that King better effects intent of parties).

This court applied this same rule to a grant of a fractional mineral interest in Middleton v. Broussard, 504 S.W.2d 839 (Tex.1974). In Middleton, the grantors' deed conveyed undivided fractional interests in several tracts of land, reserving all of the minerals to the grantor. The deed then granted a one-sixty-fourth royalty interest "in and to all of the oil, gas and other minerals in and under and that may be produced from all of the described land and premises." We relied on the phrase "described land and premises" and King to hold that the deed granted a one-sixty-fourth royalty in the entire mineral estate under the land, not just in the fractional interest conveyed. Middleton, 504 S.W.2d at 842.

The Grande to Fogelman deed reserves one-fourth of the royalty from minerals "that may be produced from the lands above described." This places the reservation within the King rule. Averyt argues, however, that the exception of one-half of the minerals in the "subject to" clause is part of the description of the land. Averyt asserts that the "lands above described," therefore, are the two tracts minus the one-half mineral interest excepted from the grant in the "subject to" clause. Averyt relies on Bass v. Harper, 441 S.W.2d 825 (Tex.1969), for his position, arguing that Bass controls our decision by holding that the "subject to" clause limits the description of the land. In Bass, Bass owned the entire surface and eight-fourteenths of the one-eighth royalty in a tract of land. Bass conveyed an undivided one-half interest in the land to Miller. The deed's "subject to" clause excepted from the conveyance various mineral interests totaling six-fourteenths of the royalty. This court held that the granting clause conveyed one-half of the one-eighth royalty because it contained no language limiting the grant to one-half of the interest Bass owned. This court then held that the grant of seven-fourteenths of the royalty was subject to the exception of six-fourteenths, leaving Miller with one-fourteenth of the royalty. 441 S.W.2d at 827-28. In reaching this decision, the court held that the exception of six-fourteenths of the royalty in the "subject to" clause operated to limit the estate granted and did not just protect Bass on his warranty. 441 S.W.2d at 827.

Bass is readily distinguishable and does not control our decision. Bass only holds that the "subject to" clause limits the estate granted in the land, it does not reach the question here: whether the "subject to" clause forms part of the description of the land.

We hold that a "subject to" clause which excepts fractional mineral interests from lands and minerals conveyed does not form part of the description of the land. The "subject to" clause does limit the estate granted and warranted. Bass, 441 S.W.2d at 827. There is a difference, however, between the estate granted and the land described. "Land" is the physical earth in its natural state, while an estate in land is a legal unit of ownership in the physical land. 1 Thompson, Thompson on Real Property § 51 (1939). To



define the estate granted is to set out the portion of the physical land conveyed. In contrast, "[T]o describe land is to outline its boundaries so that it may be located on the ground, and not to define the estate conveyed therein." Sharp v. Fowler, 151 Tex. 490, 252 S.W.2d 153, 154 (1952).

Because "land" includes the surface of the earth and everything over and under it, including minerals in place, Thompson at § 51, a description of land includes the land and all the minerals naturally existing underneath. Holloways Unknown Heirs v. Whatley, 133 Tex. 608, 131 S.W.2d 89, 92 (Tex.Comm'n App. 1939, opinion adopted). In other words, minerals under "the lands described" refers to all the minerals under the entire land because minerals "would necessarily be produced from the whole land, irrespective of the

Page 895

ownership of undivided shares thereof." King, 192 S.W.2d at 263. The "subject to" clause affects "the ownership of the undivided shares" of the minerals, not the description of the land containing them. Id. Thus, when the Grande to Fogelman deed reserved a fraction of the minerals in the "lands above described," it meant the minerals under the entire physical tracts described in the deed by metes and bounds. Id. at 262. The dissent correctly notes that here the interest conveyed is the same as the interest described. However, Grande reserved one-fourth of the royalty from the lands described, not from the interest described.

The deed further evidences an intent to reserve one-fourth of the royalty from the minerals under the entire land when it reserved " 1/4th of the royalty covering all of the oil, gas and other minerals ... in and under and that may be produced from the lands above described" (emphasis added). Middleton, 504 S.W.2d at 843; King, 192 S.W.2d at 263. We therefore hold that the Grande to Fogelman deed reserved to Grande an undivided one-fourth of the royalty from the minerals produced from the whole of the tracts described in the deed.

Regardless of the appeal of Averyt's argument that the "subject to" clause is part of the description of the land, its adoption now would disturb the ownership of all minerals granted or reserved in deeds prepared according to the long standing rule here applied. King was written in 1946. Since then, numerous cases have relied on the King rule to apportion ownership of minerals. Middleton, 504 S.W.2d at 843; Gibson v. Turner, 156 Tex. 289, 294 S.W.2d 781 (1956); McElmurray v. McElmurray, 270 S.W.2d 880 (Tex.Civ.App.--Eastland 1954, writ ref'd); Miller v. Speed, 259 S.W.2d 235, 236 (Tex.Civ.App.--Eastland 1952), no writ); R. Lacy, Inc. v. Jarrett, 214 S.W.2d 692 (Tex.Civ.App.-- Texarkana 1948, writ ref'd). For other states relying on the King rule, see Price v. Atlantic Refining Co., 79 N.M. 629, 447 P.2d 509 (1968); Williams v. Sohio Petroleum Co., 18 Ill.App.2d 194, 151 N.E.2d 645 (1958); Ferguson v. Morgan, 220 Miss. 266, 70 So.2d 866 (1954); Pollock v. McAlester Fuel Co., 215 Ark. 842, 223 S.W.2d 813 (1949). Cf. Krauss v. Fry, 209 La. 250, 24 So.2d 464 (1946) ("land described" held ambiguous, parol evidence considered). Also, virtually all of the commentators set out the King rule as governing this type of situation. Hemingway, Law of Oil and Gas § 3.2, pp. 113-14 (2nd ed. 1983); 1 Kuntz, Oil and Gas § 14.5, p. 331 (1960); 1 Williams and Meyers, Oil and Gas Law § 312, p. 600 n. 4 (1970); Barber, Duhig to Date: Problems in the Conveyancing of Fractional Mineral Interests 13 Sw. L.J. 321, 323 (1959); Masterson, Double Fraction Problems in Instruments Involving Mineral Interests 11 Sw. L.J. 281, 282-83 (1957). Undoubtedly, numerous deeds, in addition to the one in this case, were prepared according to these rules. We should be loathe to change long-standing rules in the oil and gas field when doing so would alter the ownership of minerals conveyed in deeds which rely on the law established by this court and followed by lower courts, commentators, and especially lawyers advising their clients.



Averyt also complains that the trial court erred in failing to file findings of fact and conclusions of law. Averyt properly requested findings of fact and conclusions of law, which the trial court did not file. However, the record does not reveal a complaint filed "in writing, within five days after" the findings were due as required by Tex.R.Civ.P. 297. Averyt waived this complaint.

We overrule all of Averyt's points of error. Accordingly, we affirm the judgment of the court of appeals and that of the trial court.

KILGARLIN, J., joined by RAY and WALLACE, JJ., dissents.

KILGARLIN, Justice, dissenting.

I respectfully dissent. How can Grande, Inc. reserve to itself a one-fourth royalty interest in the half of the mineral estate in which it had no interest? The Grande to

Page 896

Fogleman deed clearly evidences that Texas Osage already owned the other one-half mineral interest.

The court purports to rely on King v. First National Bank of Wichita Falls, 144 Tex. 583, 192 S.W.2d 260 (1946), and Middleton v. Broussard, 504 S.W.2d 839 (Tex.1974), yet it ignores the reasoning used in these cases. The court cites King for the proposition that the reservation refers only to the land described, not the land conveyed. However, in King, this court looked "forward from the granting clause and backward from the reservation clause" to determine the land described. 144 Tex. at 587, 192 S.W.2d at 263. In this case, the intervening paragraphs between these clauses contain the "subject to" clauses; therefore, they are part of the description. Accordingly, the "subject to" clauses limit and define the land described to that which Grande owned.

This limitation is also in accord with our decision in Bass v. Harper, 441 S.W.2d 825 (Tex.1969), which the court attempts to distinguish. In Bass, the deed also contained a "subject to" clause. While the court correctly notes that in Bass, the "subject to" clause was held to limit the estate granted, it also limited the description of the estate of the grantor.

The court's reliance on Middleton is similarly misguided. While the court appears to be following Middleton, the court overlooks an important fact. The grantors in Middleton owned all of the surface and mineral estate and conveyed "a lesser undivided surface estate," reserved all of the minerals, and granted a "one sixty-fourth royalty 'in and to said tracts of land'." 504 S.W.2d at 842. Thus, the description of the land necessarily included all that was owned by the grantors. From that description of the land owned by the Broussards, the deed conveyed the lesser included surface estate and the royalty interest in all of the land owned by the Broussards.

Here, Grande only owned a one-half mineral interest. Grande could not have possibly reserved a royalty in the one-half mineral interest of Texas Osage. This case is clearly on point with Hooks v. Neill, 21 S.W.2d 532 (Tex.Civ.App.--Galveston 1929, writ ref'd). In Hooks, Mrs. Neill conveyed her one-half-undivided interest in a certain tract of land and reserved a "one thirty-second of all oil on and under said land and premises herein described and conveyed." 21 S.W.2d at 538.

The court attempts to distinguish Hooks by arguing that the key language in Hooks was the word "conveyed" in the reservation clause, while in this case, the reservation referred to the land "described." What the court misses is that both are one and the same. The interest described in the Grande deed is the



interest conveyed. Accordingly, I would reverse the judgment of the court of appeals and hold that the deed reserved a one-fourth royalty from the one-half mineral interest Grande owned at the time of the conveyance.

RAY and WALLACE, JJ., join in this dissent.

KILGARLIN, Judge, dissenting on rehearing.

In order to elaborate on my earlier views, I further respectfully dissent. An unambiguous deed "must be given the legal effect resulting from a construction of the language contained within the four corners of the instrument. All parts of the instrument must be given effect, if possible to do so, without violating any legal principle." Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166, 167 (1953) (emphasis added). Therefore, we must determine the parties' intent by construing the language of the deed. Id. 259 S.W.2d at 168.

Although the deed is lengthy, analysis of all provisions within "the four corners" is necessary to justly construe this instrument. The Grande-Fogleman deed commenced with the general granting language:

THE STATE OF TEXAS,

COUNTY OF FAYETTE.

KNOW ALL MEN BY THESE PRESENTS, that Grande, Inc., a Texas Corporation, acting by and through its

Page 897

Vice-President, Terry Frazee, hereunto authorized by Resolution of the Board of Directors of said Grande, Inc., for the consideration hereinafter stated, paid and to be paid by Gordon V. Fogleman and wife, Clarice E. Fogleman, have GRANTED, SOLD and CONVEYED, and by these presents do GRANT, SELL and CONVEY, subject to the Vendor's Lien retained, unto the said Gordon V. Fogleman and wife, Clarice E. Fogleman, of Harris County, Texas, the following described real estate:

Texas adheres to the ownership in place concept, which recognizes that a corporeal estate in realty may be created in the minerals apart from the surface. Therefore, the real estate described in the deed included both the surface estate and the mineral estate.

The deed's description of that which was granted states:

FIRST TRACT:

All that certain tract or parcel of land, situated in Fayette County, Texas, a part of the Franklin Lewis League, A-64, and the John Eblin League, A-42, same being a part of a 128.21 acre tract of land conveyed from Malisia Rivers, et al, to Grande, Inc., in a deed dated August 3, 1977, and recorded in Volume 507, Pages 109-112, Deed Records of Fayette County, Texas, and described by metes and bounds as follows, to-wit:

BEGINNING at an iron pin for the North corner, same being the North corner of the said Grande, Inc. 128.21 acres;



THENCE South 47? 01' East 1856.0 feet to an iron pin for the East corner, same being the East corner of the said Grande, Inc., 128.21 acres;

THENCE South 42? 46 1/4' West 1415.3 feet to an iron pin for a corner, same being a corner of the said Grande, Inc. 128.21 acres;

THENCE North 47? 18 1/4' West 782.9 feet to an iron pin for an interior corner, same being an interior corner of the said Grande, Inc. 128.21 acres;

THENCE South 41? 57 3/4' West 2082.3 feet to an iron pin for the South corner, same lying in the Southeast boundary of the said Grande, Inc. 128.21 acres;

THENCE North 52? 39 1/4' West 39.1 feet to an iron pin, North 33? 39 1/4' East 112.1 feet to an iron pin, North 10? 22 3/4' East 81.8 feet to an iron pin, North 26? 46 1/2' East 144.7 feet to an iron pin, North 31? 12 1/4' East 628.1 feet to an iron pin, North 10? 21 3/4' West 1068.0 feet to an iron pin for the West corner, same being an interior corner of the said Grande, Inc. 128.21 acres;

THENCE North 43? 18 3/4' East 1934.1 feet along the Northwest boundary of the said Grande, Inc. 128.21 acres to the place of beginning, containing 86.62 acres of land.

SECOND TRACT:

An undivided 1/2 interest in and to all that certain tract or parcel of land, situated in Fayette County, Texas, a part of the John Eblin League, A-42, same being a part of a 128.21 acre tract of land conveyed from Malisia Rivers, et al, to Grande, Inc., in a deed dated August 3, 1977, and recorded in Volume 507, Pages 109-112, Deed Records of Fayette County, Texas, and described by metes and bounds as follows, to-wit:

BEGINNING at an iron pin for the South corner, same being the South corner of the said Grande, Inc., 128.21 acres, same lying in the Northeast margin of a County Road;

THENCE North 43? 59' West 34.0 feet along the Northeast margin of the said County Road to an iron pin for the West Corner;

THENCE North 33? 39 1/4' East 34.8 feet to an iron pin for the North corner;

THENCE South 52? 39 1/4' East 39.1 feet to an iron pin for the East corner, same lying in the Southeast boundary of the said Grande, Inc. 128.21 acres;

THENCE South 41? 57 3/4' West 40.0 feet along the Southeast boundary of the said Grande, Inc. 128.21 acres to the place of beginning, containing 0.03 acre of land.

LESS, HOWEVER, AND SUBJECT TO an undivided 1/2 interest in the oil, gas, sulphur, and all other minerals, described

Page 898

in that deed from Rubie Keilers and Annie Keilers, to Texas Osage Co-operative Royalty Pool, et al, dated May 2, 1930, and recorded in Volume 152, Pages 75-76, Deed Records of Fayette County, Texas.



LESS, ALSO, AND SUBJECT TO certain rights granted to Fayette Electric Cooperative, Inc., by an instrument in writing from David Rivers, et ux, dated June 7, 1945, and recorded in Volume 217, Page 271, Deed Records of Fayette County, Texas.

This description was followed by a reservation clause excepting one-fourth of the minerals from the lands above described:

There is hereby excepted from this conveyance and reserved to Grantor, its successors and assigns, an undivided 1/4th of the royalty covering all of the oil, gas and other minerals, including but not limited to uranium, coal, lignite, iron, gold, silver, and all other minerals, whether or not now known to be valuable and whether by drilling, strip mining, or any other method, in, to and under or that may be produced from the lands above described to be paid or delivered unto the Grantor, its successors and assigns, free of cost to it from royalty oil, gas, and other minerals, as above defined, forever. Said interest hereby reserved is a non-participating royalty interest and shall not participate in the bonuses paid for any oil, gas and other minerals lease, as above defined, covering said lands, nor shall it participate in the money rentals which may be paid to extend the time within which a well may be begun under the terms of any lease covering said lands. It shall not be necessary for the Grantor, its successors or assigns, to join in the execution of any lease covering said royalty interest herein reserved and the said Grantees, their heirs or assigns, shall have the right to lease said lands for oil, gas and other minerals, as above defined, provided, however, that all such leases shall provide for a royalty of not less than 1/8th.

Because the reservation clause excepts one-fourth of the minerals from the lands described rather than one-fourth of the minerals from the lands conveyed, we are called upon to determine what constitutes the "above described lands." We were confronted with this question in King v. First National Bank of Wichita Falls, 144 Tex. 583, 192 S.W.2d 260 (1946). In King, the pertinent portions of the deed were as follows:

That J.E. Duncan, a single man, having never been married, of the County of Young, State of Texas, for and in consideration of the sum of Ten and No/100 Dollars, and other good and valuable consideration, all cash to me in hand paid by B.W. King, the receipt of which is hereby acknowledged, have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said B.W. King, of the County of Young, State of Texas, all that certain undivided one-half ( 1/2) interest (being all of the interest owned by the grantor) in and to the following described land situated in Young County, Texas, to-wit:

1st Tract--West one-half of T.E. & L. Company Survey No. 461, Abstract No. 668, containing 160 acres more or less.

2nd Tract--Southeast one-fourth of T.E. & L. Company Survey No. 460, Abstract No. 667, containing 80 acres, more or less.

The Grantor hereby reserves unto himself, his heirs, successors and assigns for a period of ten (10) years only from this date an undivided one-eighth ( 1/8) of the usual and customary one-eighth royalty interest reserved by the land-owner in oil and gas and othe minerals that may be produced from the hereinabove described land;

192 S.W.2d at 261 (emphasis added). To determine what constituted the "hereinabove described land," this court looked "forward from the granting clause and backward from the reservation clause," finding it "evident that the terms 'following described land,' 'hereinabove described land,' 'said land,' and 'premises' ... relate



Page 899

to the intervening paragraphs of the deed." Id. at 263 (emphasis added).

There is logic in the King court's conclusion. The granting clause concludes with the words "the following described land, ... to-wit:." The reservation clause applies to the "above described land." The provisions which appeared between the granting clause and the reservation clause were therefore meant to constitute the description.

In the case at bar, the court has rejected this theory by holding that one of the provisions appearing between the granting clause and the reservation clause in the Grande-Fogleman deed is not part of the land description. This particular portion is:

Less, however, and subject to an undivided one-half interest in the oil, gas, sulphur and other minerals, described in that deed from Rubie Keilers and Annie Keilers, to Texas Osage Co-operative Royalty Pool, et al, dated May 2, 1930, and recorded in Volume 152, pages 75 and 76, Deed Records of Fayette County, Texas.

In reaching its decision, the court has failed to clearly construe the meanings of the terms "land" and "described" as viewed in the context of a deed.

"Land" is a term which on its face includes both the surface and the minerals in and under the land. The broad scope of the meaning of the word "land" is well illustrated by our decision in Holloway's Unknown Heirs v. Whatley, 133 Tex. 608, 131 S.W.2d 89 (1939). In Holloway, this court held a mineral estate, when constructively severed from the surface, is still "land." See Sharp v. Fowler, 151 Tex. 490, 252 S.W.2d 153, 154 (1952), and Holloway, 131 S.W.2d at 92.

The term "description" refers to:

[T]he subject matter of a deed, including all reservations and exceptions contained therein. The term can also be applied to the language defining the size of the interest conveyed. Thus, the 'description' determines the scope of the notice given by the deed to, and the scope of the proper reliance on the deed by, bona fide purchasers of land. A description must be sufficiently full and definite to afford some means of identification of the property or refer to something extrinsic by which the land may be identified with certainty. These criteria are usually applied with liberalty.

6A, Powell on Real Property § 887 (emphasis added). "Descriptions are commonly phrased in terms of monuments, maps and lot numbers, stated occupancies, metes and bounds, or quantity, " id. at 887; see Canter v. Lindsey, 575 S.W.2d 331 (Tex.Civ.App.--El Paso 1978, writ ref'd n.r.e.); and the description part of a deed has been described by this court as "an identifying reference to the interest in land which was the subject of the conveyance." Rutherford v. Randal, 593 S.W.2d 949 (Tex.1980).

A severed mineral estate is land. Land is subject to a description, as a means of identification. In order to identify a mineral interest, it is necessary to give a description of the surface under which it is located and the quantity of the minerals below.

In the Grande-Fogleman deed, the description began with the leagues, quantity, and metes and bounds of the land, which on its face included the surface of the earth and everything over and under it, including minerals in place. Thompson on Real Property at § 1531 (1934). This description was immediately followed by language limiting the mineral description to one-half of the surface "less an



undivided one-half described in" a prior deed. Only when we include this limiting language is, as Professor Powell stated, the description "sufficiently full and definite to afford [a] means of identification of the property," property which consisted of all the surface and one-half of the minerals.

In Middleton v. Broussard, 504 S.W.2d 839 (Tex.1974), the Broussards owned all of the surface estate and the mineral estate. The granting clause and the questioned descriptions in their deed to Middleton were as follows:

Page 900

The Broussard-Middleton Deed

... have GRANTED, SOLD and CONVEYED, and by these presents do GRANT, SELL and CONVEY unto the said R.M. Middleton, of the County of Chambers, State of Texas, (subject, however, to the exception and reservation of all the oil, gas and other minerals, also a certain right-of-way deed for a ditch, as hereinafter specifically indicated) all those certain tracts or parcels of land situated in Chambers County, Texas, about seven or eight miles southeast of the town of Anahuac, and also a one-sixty-fourth ( 1/64) royalty right and interest in and to said tracts of land, and both the said tracts of land and the said one-sixty-fourth ( 1/64) royalty right and interest therein, being particularly described as follows: FIRST: An undivided twenty-two-thirty-seconds ( 22/32) interest (795.5 acres) in and to 1157 acres of the R.E. Booth League, which was patented to R.E. Booth by Patent No. 368, Volume 7, dated April 24th, 1848, [then follows a description of the 1157 acres by deed and record references].

SECOND: An undivided three-fourths ( 3/4) interest (99.4 acres) in and to that certain tract of land containing 132.6 acres, and known as Survey No. 178, which was patented to Erastus Moss by Patent No. 177,. Volume 9, dated December 12th, 1883, and of record in Vol. D, page 255, of said deed records.

THIRD: An undivided three-fourths ( 3/4) interest (480 acres) in and to Survey No. 74, containing 640 acres, patented to H & TC Ry. Co. by Patent No. 421, [then follows a description by deed and record references].

FOURTH: An undivided three-fourths ( 3/4) interest (480 acres) in and to Survey No. 76, containing 640 acres, patented to H & TC Ry. Co. by Patent No. 423, [then follows a description by deed and record references].

FIFTH: An undivided three-fourths ( 3/4) interest (480 acres) in and to Survey No. 80, containing 640 acres, patented to H & TC Ry. Co. by Patent No. 418, [then follows a description by deed and record references].

SIXTH: An undivided three-fourths ( 3/4) interest (615.2 acres) in and to Survey No. 82, containing 820.3 acres, patented to E. Moss by Patent No. 419, [then follows a description by deed and record references].

SEVENTH: An undivided three-fourths ( 3/4) interest (692.5 acres) in and to that certain 923 acres of Survey No. 180, containing 1023 acres, patented to John B. Murray by Patent No. 72, [then follows a description by deed and record references].

EIGHTH: All of that certain 100 acre tract of land, a part of the said J.B. Murray survey No. 180, and being the same 100 acre tract which was conveyed by E. Moss to J.T. Moss by deed dated June 14th, 1897, and of record in Vol. I, page 515, of said deed records.



NINTH: An undivided one-sixty-fourth ( 1/64) royalty interest in and to all of the oil, gas and other minerals in and under and that may be produced and saved from all of the above described land and premises, and the said one-sixty-fourth ( 1/64) royalty interest to be delivered free of expense to the grantee herein, his heirs or assigns, on the land at the well or wells producing the same into the tanks or pipe lines in the usual manner to the credit of the grantee, his heirs or assigns.

The Broussards began with the severance of the mineral estate from the surface estate in the tracts of land by reserving to themselves all of the mineral estate. They then granted the Middletons a one-sixty-fourth royalty in the minerals on the tracts of land. A description of the tracts followed. Confusion was created in Broussard because the language sets out a description of the surface of each tract for identification purposes and carves out undivided fractional surface interests in each tract. The conveyance of surface interests

Page 901

was out of the described tracts, and the conveyance of a royalty interest was out of the described tracts. This court therefore concluded that the grantors intended that the one-sixty-fourth royalty in the lands described referred to the tracts which were described in entirety.

In the Grande-Fogleman deed, a description by metes and bounds was given of the land. Standing alone, this description covered both the surface and the minerals. Since Grande did not own all the minerals, the description was modified by subtracting the one-half previously severed mineral interest ("land" under Holloway ) from the description.

The intent of the parties to have the above-described land refer to all of the surface and one-half the minerals is further evidenced by language appearing at the conclusion of the Grande-Fogleman deed:

But it is expressly agreed that the Vendor's Lien is hereby retained against the above described premises and improvements until the indebtedness above mentioned, as evidenced by said promissory note, both principal and interest is fully paid, it being understood that when said note is paid in full this deed shall thereupon become absolute.

If we are to accept the argument proffered by the court, theoretically Grande retained and the Foglemans gave a vendor's lien on the half mineral interest which neither one of them ever owned. Certainly this was neither of the parties' intention.

To determine the intent of these parties, we should construe the language contained within the four corners of the Grande-Fogleman deed. We can give effect to all parts of the instrument without violating any legal principles by holding that the provision in question was meant to be part of the description of the land in this deed. My regret is that my brethren have chosen not to do so.

RAY, J., joins in this dissent.



21 S.W.2d 532
HOOKS et al.
v.
NEILL et al.
(No. 9320.)
Court of Civil Appeals of Texas. Galveston.
July 18, 1929.
Rehearing Denied October 24, 1929.
Page 533
Appeal from District Court, Harris County; Walter E. Monteith, Judge.
Action by Charles G. Hooks and others against Robert T. Neill and others, in which defendant named filed a cross-action against the Oxford Oil Company, R. H. Ward, and another. From the judgment, Hooks and the named cross-defendants appeal. Reformed and affirmed.
Gordon O. McGehee and R. H. Ward, both of Houston, for appellants.
Kennerly, Williams, Lee, Hill & Sears, of Houston, and Hill, Smith & Neill, of San Angelo, for appellees.
LANE, J.

On the 18th day of November, 1902, Stephen Jackson, who owned 43 acres of land, a part of the Stephen Jackson league, near the town of Sour Lake, Tex., executed a deed wherein it is recited that "for and in consideration of the sum of twelve hundred ($1,200) dollars to me in hand paid by *Mrs. M. J. Mackey* and *Mrs. Dora M. Neill,* and *C. C. Todd,* have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Mrs. M. J. Mackey and Mrs. Dora M. Neill of San Antonio [here a 1-acre tract of land, a part of the 43-acre tract, is described by metes and bounds], "to have and to hold the above described premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said *Mrs. M. J. Mackey* and *Mrs. Dora M. Neill,* their heirs and assigns forever. And I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said *Mrs. M. J. Mackey* and *Mrs. Dora M. Neill,* their heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof." (Italics ours.)

It will be noticed that, while the conveyance recites that C. C. Todd paid a part of the consideration therefor, the land was in fact

Page 534

conveyed to Mrs. Mackey and Mrs. Neill only. On the 29th day of April, 1903, C. C. Todd executed and delivered to Mrs. Mary Mackey a deed, wherein it is recited:

"That I, C. C. Todd, a citizen of Beaumont, Texas, of the county of Jefferson, state of Texas, for and in consideration of the sum of two hundred sixty-six and two-thirds ($266 2/3) dollars by Mrs. Mary J. Mackey of San Antonio, Texas and Co. of Bexar, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Mary J. Mackey of the County of Bexar and State of Texas, all of my interest in that certain lot or parcel and tract of land being situated near Sour Lake, Texas, and which is a part of a 43-acre survey of land deeded to me in a subdivision among the heirs of Stephen Jackson, Sr., deceased, and which is a part of the Stephen Jackson league, and the metes and boundaries are more fully described as follows, to wit: [Same description as contained in previous deed, to which reference is made.] Including within said bounds all of my interest, that interest being one-third of an acre (1/3) and no more.



"To have and to hold the above described premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Mary J. Mackey, her heirs and assigns forever; and I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Mary J. Mackey, her heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

This recital is followed by the habendum and general warranty clauses. Upon the death of Mrs. Mackey, such interest as she owned in the one acre of land became vested in James Mackey, and upon the death of Mrs. Dora Neill such interest in said land as she owned became vested in Robert T. Neill, and his sister, Mrs. Dora Neill Raymond. On the 30th day of July, 1925, James Mackey by special warranty deed conveyed all title and interest he owned in the one acre of land to R. L. Durham, trustee. On the 11th day of August, 1925, Robert T. Neill and Mrs. Dora Neill Raymond by special warranty deed conveyed to R. L. Durham, trustee, all title and interest they owned in the one acre of land, except such as was reserved by the recital in the deed as follows:

"It is hereby expressly agreed and understood and made a part of this deed that there is excepted and reserved to the grantors herein a one thirty-second part of all oil on and under the said land and premises herein described and conveyed, which shall be delivered to the grantors on the part of the land where produced. The grantors, however, give the grantee and his assigns the privilege of buying said one thirty-second part of said oil at the market price which is paid for oil of like character in the same vicinity. Settlement shall be made with the grantors on or before the 20th day of each month for oil extracted and saved during the preceding calendar month."

On the 2d day of October, 1925, R. L. Durham, trustee, by warranty deed conveyed the one acre of land involved to C. A. Kelly, wherein it is recited as follows:

"Whereas, heretofore, to wit, on the 30th day of July, 1925, James R. Mackey, of Bexar county, Texas, conveyed to R. L. Durham, trustee, a certain tract or parcel of land hereinafter described; and

"Whereas, on the _____ day of August, A. D. 1925, Robert T. Neill and Dora Neill Raymond _____ to R. L. Durham, trustee, a certain tract or parcel of land, both of said deeds being duly recorded in the Deed Records of Hardin county, Texas. [Here follows description];

"Whereas, said title to said above described premises was placed in the name of R. L. Durham, trustee, for the use and benefit of C. A. Kelly, of Harris County, Texas; and,

"Whereas, said C. A. Kelly has paid the purchase money for same:

"Now, therefore, know all men by these presents that I, R. L. Durham, trustee as aforesaid, for and in consideration of a good, valid, and valuable consideration to me in hand paid by C. A. Kelly, have bargained, sold, and conveyed, and by these presents do bargain, sell, and convey unto the said C. A. Kelly all the right, title and interest that I acquired as trustee by virtue of said deed from Frank B. Warner to R. L. Durham, trustee. * * *

"It is expressly understood, however, that there is reserved from this conveyance a one-sixteenth (1/16) of all oil and gas produced, saved and sold off of said premises, which one-sixteenth (1/16) of said oil and gas is to be run to the credit of the said Frank B. Warner in any pipe lines with which any wells drilled on said premises may be connected."

This deed was filed for record October 23, 1925. On the 21st day of October, 1925, R. L. Durham, trustee, conveyed by his special warranty deed all his right, title, and interest in and to the one acre of land



to the Oxford Oil Company. Such deed was filed for record December 19, 1925. The Oxford Oil Company conveyed a one-fourth interest in the one acre to R. H. Ward.

On the 9th day of December, 1925, R. L. Durham executed and delivered to C. A. Kelly a correction deed to the one acre, wherein it is recited that he (Durham) held the title to the land in trust for Kelly, who paid the purchase money for same, and wherein it is recited as follows:

"Whereas, in the last paragraph of said deed from R. L. Durham, trustee, to the said C. A. Kelly, it is stated that there is reserved from said conveyance one-sixteenth of all the oil and gas produced, saved and sold off of said premises, which one-sixteenth of said oil

Page 535

and gas is to be run to the credit of Frank B. Warner in any pipe line to which said wells drilled on said premises may be connected; and

"Whereas, said recitation in said deed is a mistake, and that the said paragraph should read that there is reserved a one thirty-second royalty to Robert T. Neill and Dora Neill Raymond, instead of Frank B. Warner:

"Therefore, know all men by these presents, that I, R. L. Durham, trustee, of the county of Harris and state of Texas, for and in consideration of a good, valid, and valuable consideration to me in hand paid by the said C. A. Kelly, receipt of which is hereby acknowledged, and for the purpose of correcting the error heretofore described, have bargained, sold, and conveyed, and by these presents do bargain, sell, and convey, unto the said C. A. Kelly all that certain tract or parcel of land hereinbefore described.

"It is however expressly understood that there is reserved from this conveyance a one thirty-second of all oil and gas produced, saved and sold off of said premises, which one thirty-second of said oil and gas is to be run to the credit of said Robert T. Neill and Dora Neill Raymond in any pipe lines to which any well drilled upon said premises may be connected."

As both the Oxford Oil Company and Kelly were claiming the one acre under their respective deeds from Durham, and as both desired to have the land developed for the discovery of oil, they, on the 14th day of June, 1926, by agreement between them, made separate lease contracts with the Humphreys Corporation for such development; by the terms of such contracts Humphreys Corporation was to pay to Kelly and the Oxford Oil Company a one-sixteenth royalty of all oil and gas produced from the land. It was also agreed among said parties that the oil coming to Kelly and the Oxford Company should be deposited with the Guaranty Trust Company until their respective rights to the land should be determined by the courts or by compromise. Immediately after such agreement the Humphreys Corporation took possession of the land, produced large quantities of oil therefrom, which it sold to the Gulf Pipe Line Company.

On or about the 12th day of July, 1926, Kelly and the Oxford Company adjusted and settled their differences by an instrument in writing, whereby it was agreed that the Oxford Oil Company should convey to Kelly all of its right, title, and interest in the land subject to the rights of the Oil Company to receive an undivided one-third of all the royalties coming from the development made of the land by the Humphreys Oil Company. Such agreement was carried out by them, and the land was conveyed by the Oxford Oil Company to Kelly, and on July 26, 1926, Kelly conveyed all of his right in and to the land to Charles G. Hooks, subject to the rights of the Oxford Company to the one-third royalties above mentioned. It is agreed by the parties that, while R. H. Ward was not a party to the agreement and settlement entered into between Kelly, the Oxford Company, and the Humphreys Company, he ratified



the same with the understanding that he was to be the owner of one-fourth of the one-third royalties which were to go to the Oxford Company.

At the time of the institution of the suit hereinafter mentioned the Humphreys Company was drilling an additional well for oil on the land, and if oil is produced therefrom it will be delivered to the Gulf Pipe Line Company and held by it for those entitled to the same.

Charles G. Hooks instituted this suit against the Gulf Pipe Line Company, the Oxford Oil Company, Robert T. Neill, Mrs. Dora Neill Raymond, a feme sole, and R. H. Ward, and among other things alleged the matters stated above as facts, and further alleged that he and the Oxford Oil Company and R. H. Ward, by virtue of the deed from Stephen Jackson to Mrs. Mary J. Mackey and Mrs. Dora M. Neill, and by virtue of the deed from C. C. Todd to Mrs. Mary J. Mackey, claimed that the said defendants Robert T. Neill and his sister, Mrs. Dora Neill Raymond, only owned a one-third interest in this tract of land, and when they conveyed all of their right, title, and interest in this land to said Durham, trustee, the only interest they conveyed to Durham was their undivided one-third interest in the land, and the exception and reservation in the deed to R. L. Durham, trustee, hereinabove set out, only reserved to Robert T. Neill and Mrs. Dora Neill Raymond a one thirty-second interest of the oil in their one-third interest in the *land and premises conveyed* to R. L. Durham, trustee, and did not have the effect of reserving to them a one thirty-second interest in the entire oil produced and to be produced from the land and premises set forth and described in the petition; that, notwithstanding the plain purport and intent of said exception and reservation in the deed, defendants Robert T. Neill and his sister, Mrs. Dora Neill Raymond, are claiming and insisting that by virtue of said exception or reservation in their deed they are entitled to receive a one thirty-second interest in all of the oil produced on the land in controversy, whereas plaintiff and defendants Oxford Oil Company and R. H. Ward contend that the interest of Robert T. Neill and Mrs. Dora Neill Raymond amounts only to one ninety-sixth of the oil produced and to be produced from said land and premises; that he endeavored to get division orders signed by defendants Robert T. Neill and Mrs. Dora Neill Raymond, whereby they would be entitled to receive a one ninety-sixth of the oil produced on the land, in order that plaintiff and the other defendants might receive their proper proportion of the royalties, but that the defendants Robert T. Neill and Dora Neill Raymond refused to sign such division

Page 536

orders, and insist that they are entitled to receive from the Gulf Pipe Line Company their one thirty-second interest of all the oil produced and to be produced by the Humphreys Corporation and run through the pipe line of defendant Gulf Pipe Line Company; that the Gulf Pipe Line Company has no interest in this suit, and is a mere stakeholder, and is perfectly willing to pay for all the oil received and run by it to the parties to this suit in proportion to their respective interests, whenever the same can be adjusted between the parties to this suit, and the defendant Robert T. Neill and his sister, Mrs. Dora Neill Raymond; that, in consequence of the claim of the defendants Robert T. Neill and Mrs. Dora Neill Raymond, the defendant Gulf Pipe Line Company has retained in its possession a one thirty-second interest of all the oil produced from the land, and will continue in the future to so do, until the claim of the defendants Robert T. Neill and Mrs. Dora Neill Raymond can be settled; that if he be wrong in his claim that defendants Robert T. Neill and Mrs. Dora Neill Raymond are only entitled to a one ninety-sixth of the oil produced and to be produced from the land in controversy by virtue of said reservation or exception to the deed to Durham, trustee, then, in the alternative, plaintiff avers that under no circumstances were the defendants Robert T. Neill and Mrs. Dora Neill Raymond the owners of more than one-half of the land and premises, and were only entitled, by virtue of the reservation or exception in their deed to Durham, trustee, to claim and receive a one sixty-fourth of the oil produced or to be produced and run through the pipe line of the defendant Gulf Pipe Line Company.



The plaintiff further alleged that, while Robert T. Neill and Mrs. Dora Neill Raymond were only entitled to one ninety-sixth of the oil produced from the one acre of land, the Gulf Pipe Line Company is unlawfully retaining and refusing to account for and pay to the Oxford Oil Company, R. H. Ward, and plaintiff their respective portions of such oil, and will continue such refusal until the provisions of the deed from the Neills to Durham, trustee, can be construed by the court. He further alleged that the Humphreys Corporation had produced from the land 40,000 barrels of oil, of the market value of $1.90 per barrel, and that it will continue to produce large quantities of oil from the land.

The plaintiff asked that the court determine by a decree that Robert T. Neill and Mrs. Dora Neill Raymond are only entitled to one ninety-sixth of the oil produced and to be produced from the land; that he have judgment against the Gulf Pipe Line Company, requiring it to pay to him his proper proportion of the one thirty-second of the oil now in possession of said company, together with that which it may receive in the future, and that an accounting be had in order to determine the exact amount of oil to which he might be entitled. The Oxford Oil Company and R. H. Ward adopted the allegations and prayer made by the plaintiff, and asked that they be adjudged their respective interests in the oil, and that they be awarded a judgment against the Gulf Pipe Line Company for their respective interests in said oil.

The defendants Robert T. Neill and Mrs. Dora Neill Raymond, hereinbefore referred to as the Neills, answered by general demurrer, general denial, and by averments that they jointly owned a one thirty-second of all the oil on and under the one acre of land in controversy and the proceeds of the sale of the one thirty-second part of such oil sold by the Gulf Pipe Line Company, which are being held by said company and which amounted to the sum of $2,435.66 on December 1, 1927. They prayed for a decree establishing their rights, title, and interest in and to a full undivided one thirty-second of all oil theretofore produced and to be thereafter produced from the land in controversy, and for judgment against the Pipe Line Company for the full amount of the proceeds of the sale of said one thirty-second part of said oil sold by the Pipe Line Company, and for a decree establishing in them title and ownership to the one thirty-second part of such proceeds as against plaintiffs, Charles G. Hooks, the Oxford Oil Company, and R. H. Ward.

These defendants also filed their cross-action against the Gulf Pipe Line Company, the Oxford Oil Company, R. H. Ward, and R. L. Durham, individually and as trustee under the deed executed by them to Durham, trustee. They alleged that said deed was executed and delivered by them pursuant to an explicit understanding between them and R. L. Durham that there should be reserved to them and excepted from the conveyance a full one thirty-second part of all oil on and under the land conveyed, and that such reservation and exception should be expressed in the deed. They averred that, if such understanding is not clearly and adequately expressed in the deed or expresses some contrary purpose, a failure to have words clearly expressing such understanding written into the deed was the result of mutual mistake, by reason whereof the deed should be so reformed and corrected as to express the true intent and agreement of the parties. They averred that R. L. Durham, trustee, was acting for and in behalf of all the parties to the suit, except the Gulf Pipe Line Company. They prayed for an entry of judgment correcting and reforming the deed in the particulars above specified.

The Gulf Pipe Line Company answered that it had in its possession the sum of $2,435.66, claimed by Robert T. Neill and Mrs. Dora Neill Raymond on the one side, and the plaintiff Hooks and the defendants Oxford Oil Company, and R. H. Ward on the other side, and that on account of such respective claims, it (the Gulf Pipe Line Company) could

Page 537



not make payment of such sum, and it asked the court to determine by a decree to whom the same should be paid.

Plaintiff Charles G. Hooks, by supplemental petition, answering the cross-action of Neill and Mrs. Raymond, averred that the deed from Neill and Mrs. Raymond to Durham, trustee, is plain and unambiguous upon its face, and conveys only the right, title, and interest in the land in controversy owned by such grantors, which he alleges was a one-third interest, or at most a one-half interest, dependent upon whether Mrs. Mackey owned a half interest only, or a two-thirds interest thereof; that the legal effect of the exception and reservation clause in said deed was to reserve to the grantors a one thirty-second or a one ninety-sixth interest in the oil on and under the land and premises conveyed, dependent upon the interest held and owned by them in such land. The Oxford Oil Company and R. H. Ward adopted the allegations of the plaintiff's supplemental petition.

On the 4th day of October, 1928, upon a request by Robert Neill and Mrs. Raymond, an interlocutory judgment by default was rendered in their favor as against R. L. Durham, individually and as trustee, on their cross-action. The cause was tried by the court without a jury, and judgment incorporating the aforesaid interlocutory judgment rendered against Durham was rendered. By such judgment it was decreed that the plaintiff Charles G. Hooks take nothing by his suit against the defendants Gulf Pipe Line Company, Oxford Oil Company, R. H. Ward, Robert T. Neill, and Mrs. Dora Neill Raymond; that the defendants Oxford Oil Company and R. H. Ward take nothing as against Robert T. Neill, Mrs. Dora Neill Raymond, and the Gulf Pipe Line Company; and that Robert T. Neill and Mrs. Dora Neill Raymond recover on their cross-action against R. L. Durham, individually and as trustee, Charles G. Hooks, Oxford Oil Company, R. H. Ward, and Gulf Pipe Line Company for the sum of money in the possession of the Gulf Pipe Line Company as the proceeds of a sale of the one thirty-second of all the oil produced from the land in controversy.

It is recited in the judgment that Robert T. Neill and Mrs. Dora Neill Raymond made, executed, and delivered their certain deed conveying all their right, title, and interest in the land in controversy, describing the same by metes and bounds, pursuant to an explicit agreement, theretofore made by and between them and R. L. Durham, individually and as trustee, that there should be reserved to grantors and excepted from such conveyance a full one thirty-second part of all the oil on and under the land in controversy, and that such oil should be delivered to grantors, etc. It was further decreed that the deed executed by Neill and Mrs. Raymond be corrected and reformed as of date August 11, 1925, so as to expressly reserve to Neill and Mrs. Raymond a full one thirty-second part of all the oil on and under the one acre of land.

From the judgment so rendered, Charles G. Hooks, Oxford Oil Company, and R. H. Ward have appealed.

The first contention of appellants is that by the deed of Stephen Jackson to Mrs. Neill and Mrs. Mackey they took a one-third interest each in the land in controversy, and that C. C. Todd, who paid a part of the consideration to Jackson for the conveyance, took the other one-third interest therein, which he passed to Mrs. Mackey by his deed to her; that the respective interests so acquired remained in Mrs. Neill and Mrs. Mackey at the time of the deaths of both of them, and upon their deaths such title passed to their heirs hereinbefore named, but that in no event could it be held that, by the deed of Jackson to Mrs. Neill and Mrs. Mackey, Mrs. Neill took more than a one-half undivided part interest in the land and premises conveyed.

Upon such contention they base the further contention that, by the reservation clause in the deed of Robert T. Neill and Mrs. Dora Neill Raymond to Durham, trustee, such grantors reserved and excepted



from the conveyance only a one ninety-sixth of all the oil on and under the entire tract of land, or one thirty-second of the oil on or under the premises conveyed, which was an undivided one-third of the land; but, if it be conceded that the Neills took one-half undivided interest in the land under the Jackson deed, then, in that event, Robert T. Neill and Mrs. Raymond, by the reservation clause in their deed to Durham, reserved and excepted from such conveyance a one sixty-fourth part or interest in all the oil on or under the whole tract of land, or one thirty-second part of the oil on or under the premises conveyed, which was an undivided one-half part of the land.

Upon such contention they further contend that the court erred in awarding to Robert T. Neill and Mrs. Raymond a one thirty-second of all the oil on or under the whole tract of land, or the proceeds of the sale of such one thirty-second part of the oil taken from the whole tract.

Appellees, on the other hand, contend that, by the deed of Jackson to Mrs. Neill and Mrs. Mackey, title to an undivided one-half of the land in controversy passed to and was vested in each of the grantees, to the exclusion of C. C. Todd, but that by virtue of the reservation clause in their deed to Durham a one thirty-second interest in the entire minerals, including oil, on and under the whole acre tract belonged to them.

After a careful consideration of the provisions of the deed of Jackson to Mrs. Neill and Mrs. Mackey, we have reached the conclusion that by such deed title to the land

Page 538

conveyed vested one-half in Mrs. Neill and one-half in Mrs. Mackey, each owning a one-half undivided interest therein; and after a careful examination and consideration of the undisputed evidence we have also reached the conclusion that, in the negotiations between Durham and those representing the Oxford Oil Company and C. A. Kelly and the Neills, all parties were negotiating under the understanding that the Neills were selling and the grantees were purchasing a one-half undivided interest in the land, subject to the reservation clause inserted in the deed of the Neills to Durham.

Having reached the conclusions above stated, we shall, in the decision and disposition of the other issues presented, do so under the holding that by the deed of the Neills to Durham they conveyed to Durham, trustee, a one-half undivided interest in the land in controversy, subject only to the reservation clause set out in said deed.

We are now brought to a consideration of the effect of such reservation clause; that is, as to whether by such clause the Neills reserved to themselves a one thirty-second part of all the oil on and under the whole tract of land, or whether they reserved thereby only a one thirty-second part of the oil to be produced from the interest or premises owned and conveyed by them, which was a one-half undivided interest in the land in controversy, and of the question as to the right of appellees, the Neills, under their pleadings and the evidence, to a decree reforming the deed by which they conveyed their interest in the land to Durham, by inserting therein a clause clearly stating that a one thirty-second of all the oil on and under the whole of the land is reserved and excepted from the conveyance. We shall dispose of these two questions in the reverse order as mentioned.

Appellants contend that the deed as a whole, including the reservation or exception clause, is free from ambiguity and uncertainty, and that according to the plain import and meaning of the language employed therein it should be, as a matter of law, construed as only reserving and excepting, at most, from the conveyance, a one sixty-fourth interest of the minerals on or under the land, as the deed purports to convey only an undivided one-half interest in the land, and did not purport to convey a greater interest than the Neills actually held, for it is expressly stated in the deed that "there is excepted and reserved to



the grantors herein a one thirty-second of all of the oil on and under said land and premises herein described *and conveyed.*"

The appellees, however, while contending that the language used is not uncertain or ambiguous, and that it clearly imports that grantors reserved and excepted from the conveyance one thirty-second of all oil on and under the entire tract of land, insist that, if in fact it does not clearly import such reservation and exception, they are entitled to the reformation thereof prayed for by them.

We feel disposed to agree with the contention of both appellants and appellees that the language used in the reservation clause of the deed in question is not uncertain and ambiguous. The language so used clearly imports— in fact, it clearly states—that grantors reserve and except from the conveyance one thirty-second part of all oil on and under the land and premises thereby conveyed. Now, it is clear, from all the facts and circumstances confronting the parties at the time of the execution of the deed, that the premises conveyed was at most not more than a one-half undivided part of the land in controversy. In Harris v. Cobb, 49 W. Va. 350, 38 S. E. 559, a case wherein a Mrs. Meyers, who owned 52 acres of land, sold the same to a Mrs. Harris and in the deed reserved to herself one-half of the usual royalties of one-eighth or one-sixteenth of all the oil on and under the land conveyed. In that case the court said:

"A conveyance by Mrs. Harris of the whole tract without mention of the reserved and excepted one-sixteenth part of the oil retained by Mrs. Meyers would in no wise disturb or affect the right or title of Mrs. Meyers. Mrs. Harris' deed was a matter of record. The fifteen-sixteenths of the oil was vested in fee absolutely in Elizabeth J. Harris, and a sale by her of the same with a reservation and exception of any designated part or proportion of it could not apply to that which she never had, but was still vested in her vendor. Any reservation or exception made to herself must be of her own. How could she reserve to herself that which she never owned? In Baker v. McDowell, 3 Watts & S. (Pa.) 358, B., who was seized in fee of a tract of land, subject to an outstanding title to one-half of all iron ore found in the premises, conveyed the same to H. in fee, excepting and reserving to the said B. his heirs and assigns, the one half of all iron ore found on the land. Held to be a reservation to the grantor himself of that half of the ore which was vested in him, and not a mere notice or reservation of the other half which was outstanding."

We think the holding in the case from which we have quoted is sound and should be followed, and, as it is not contended by appellees that they owned any part of the tract of land in controversy in excess of one-half thereof, the exceptions or reservations embraced in their deed to Durham must be held to refer only to the interest which they have in the land and ore which they conveyed.

The clear import and meaning of the words used by the Neills in their deed to Durham, the title to all their right, title, and interest in the land, which was a one-half undivided interest thereof, such deed passed the title to

Page 539

such interest to Durham, subject only to the reservation of a one thirty-second of one-half of the oil on and under the tract of land in controversy, or a one sixty-fourth of all the oil on and under the entire tract, and unless appellees have shown, by competent evidence, under their plea of mutual mistake, that before the execution and delivery of their deed to Durham it was agreed and understood between them and Durham that they were to retain, reserve, and except from the conveyance a full one thirty-second of all oil on and under the entire tract in controversy, and that the failure to insert in the deed a clause to that effect was omitted by a mutual mistake of the grantors and grantee, they are not entitled to a recovery of more than a one sixty-fourth part of all of the oil on and under the entire one acre of land, or its value, if taken from the land.



We have been unable to find in the record any evidence to support appellees' asserted mutual mistake. The negotiations between Robert T. Neill, for himself and his sister, on the one side, and R. H. Ward, attorney for Oxford Oil Company, acting for R. L. Durham, trustee, is shown by the several letters which passed between Robert T. Neill and R. H. Ward. It is shown by such letters and the testimony of Neill that Ward prepared a deed for Neill and his sister to sign, conveying the interest held by Robert T. Neill and his sister, Mrs. Raymond, in the one acre of land in controversy, which contains no reservation whatever. After receipt of such deed, and after several letters had passed between Ward and Neill, Neill added to the deed sent to him by Ward the reservation appearing in the deed from the Neills to Durham, which we have hereinbefore set out and many times referred to. Neill testified on direct examination that he adopted deed as prepared by Ward; that he took that deed and used it, by adding thereto the exception or reservation appearing in the deed which he and Mrs. Raymond executed, and which he delivered to Durham; that, before the deed was executed and delivered to Durham, he (Durham) agreed to give the Neills a one thirty-second of the oil on and under the land, and that he (Neill) agreed to this proposition.

Continuing, he said: "I then got hold of a blank deed, and I explained to Mr. Durham how I was going to draw that exception, and he said that was satisfactory." Now, following this conversation, Neill wrote into the deed the words there found, signifying the understanding of the agreement entered into between him and Durham relative to the proposition of the oil to be reserved and excepted from the conveyance. The deed, however, was not delivered to Durham, but was mailed to R. H. Ward at Houston, after he had sent Neill two checks of the Oxford Oil Company for $67.50 in payment for the interest in the land held by the Neills, which they conveyed to Durham as trustee. On cross-examination, Robert T. Neill testified that he did not deliver the deed to Durham in person; that Durham was not present at the time the deed was drawn; that when he stated on direct examination that he had delivered the deed to Durham, he meant he delivered it to Durham by forwarding it to his attorney; that he sent it to Judge Ward at Houston by mail.

It is shown that the date on which Durham negotiated with Neill in person was August 10, 1925. In a letter written by Neill to Judge R. H. Ward, of date August 26, 1925, he said: "I am in receipt of yours of the 24th, returning cashier's check in the sum of $67.50, with request that I indorse it over to you. In view of the fact that I sent you the deed yesterday, reciting a consideration of twice that amount, it occurs to me that you may * * * send me another one [check] in like amount. I am, therefore, holding this check of $67.50 for the present, as it seems the expedient course." It is apparent from this letter that the deed was not delivered to Durham at the time he saw Neill on August 10, or at any other time, but that it was sent to Judge Ward on the 25th of August, 1925, 15 days after Neill saw Durham and told him what exception he (Neill) would insert in the deed relative to the oil, and to which exception, as written, Durham agreed.

Appellees assume that appellants hold under the correction deed from Durham to C. A. Kelley, wherein the exception and reservation claimed by appellees is specially recognized, and wherein it is recited that it is "expressly understood that there is reserved from the conveyance a one thirty-second (1/32) of all oil and gas produced, saved and sold off of said premises," and upon such assumption contend that appellant took title subject to the reservation recited in such correction deed. In such assumption and contention appellees are in error. The correction deed has reference to the original deed of Durham to Kelley, only it in no way undertakes to correct the recitals in the deed from Durham to the Oxford Oil Company.

It is elementary that the declarations of a grantee after he has parted with his title and possession are never admissible, and a grantee cannot make an admission, after he has sold his interest in the land, in disparagement of the deed by which he acquired title. Lott v. Kaiser, 61 Tex. 665; Lacoste v. Bexar County, 28 Tex. 420, at page 224; Thompson v. Herring, 27 Tex. 285; Smith v. Gillum, 80 Tex. 126, 15 S. W. 794; Clark v. Wells, 215 Ky. 128, 284 S. W. 91, 93.



The letters and telegrams from Durham to Neill, after he had parted with the title to the land, in disparagement of the deed by which he acquired the title, were inadmissible and incompetent to prove the intention

Page 540

of the parties in the execution of the deed; so, also, was the correction deed to Kelley, especially so as against appellants, who hold under the Oxford Oil Company title. There is no evidence to support appellees' plea of mutual mistake in the preparation of the deed from the Neills to Kelley. Robert T. Neill wrote the deed, and wrote into it the very words he intended to write, and which he even new contends clearly expresses the agreement entered into between him and Durham, trustee, prior to the preparation of the deed. The deed was executed and delivered just as he prepared it.

If, however, we should concede that the recitals made by Durham in his correction deed to Kelley in disparagement of his title acquired from the Neills, after he had parted with his title, were admissible and competent evidence as against Kelley, we would nevertheless hold that would not affect the title of appellants, who hold under the deed from Durham to the Oxford Oil Company. The deed from Durham to Kelley, though executed prior to the execution of his deed to the Oxford Oil Company, was void as to the Oxford Company, as Kelley's deed had not been filed for record until after Durham had, for a valuable consideration, conveyed the land to the Oxford Company.

By article 6627, Revised Statutes of 1925, it is provided as follows: "All bargains, sales and other conveyances whatever, of any land, tenements and hereditaments, whether they may be made for passing any estate of freehold of inheritance or for a term of years * * * shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk, to be recorded as required by law." By virtue of such statute, the Oxford Company acquired title to the interest of the Neills in the one acre of land, superior to any title thereto conveyed to Kelley by Durham.

It is agreed that one fourth of the oil reserved to the Oxford Company in its conveyance to Kelley passed to, and is owned by, R. H. Ward. Such being the state of the title to the oil property or premises and the oil thereunder or thereon, conveyed by the Neills to Durham, up to the time Kelley conveyed all his interest to Charles G. Hooks, he (Hooks) holds title to the whole of the property or premises, and the oil thereon or thereunder, together with the money in possession of the Gulf Pipe Line Company, subject only to that reserved by the deed of the Neills to Durham, which we have found, from the undisputed evidence, to be a one sixty-fourth part of the oil on and under the entire one acre of land, and one-half of the proceeds of the sale of oil taken from the land now in possession of the Gulf Pipe Line Company, and to that reserved to the Oxford Oil Company, in its conveyance to Kelley, which we have found from the undisputed evidence to be one-third of 63/64 of the oil on and under the land, and one-third of one-half of the money in possession of the Gulf Pipe Line Company as the proceeds of a sale made of oil taken from the land, which said one-third of such oil and money is owned, three-fourths by the Oxford Oil Company and one-fourth by R. H. Ward.

Having reached the conclusions above expressed, it is ordered that the judgment of the trial court be and the same is here reformed, so as to decree to the several parties their respective interests in the oil on and under the premises in controversy, and their respective portions of the funds in possession of the Gulf Pipe Line Company as proceeds of the sale of oil produced from the land, as indicated by what we have said above, and that the judgment, as so reformed, be affirmed.

Reformed and affirmed.





**192 S.W.2d 260**
**KING**
**v.**
**FIRST NAT. BANK OF WICHITA FALLS.**
**No. A-705.**
**Supreme Court of Texas.**
**January 30, 1946.**
**Rehearing Denied February 27, 1946.**
**Page 261**
**Error to Court of Civil Appeals of Second Supreme Judicial District.**
**Action involving construction of a deed by B. W. King against the First National Bank of**
**Wichita Falls, as executor and trustee. A judgment adverse to plaintiff was affirmed by the Court**
**of Civil Appeals, 189 S.W.2d 347, and plaintiff brings error.**
**Judgments of the trial court and the Court of Civil Appeals affirmed.**
**Marshall & King, of Graham, and Critz, Kuykendall, Bauknight, Mann & Stevenson and**
**Richard Critz, all of Austin, for petitioner.**
**Harris & Martin, of Wichita Falls, for respondent.**
**FOLLEY, Justice.**

This suit involves the construction of a deed dated June 7, 1939, wherein J. E. Duncan, now deceased, was the grantor and the petitioner, B. W. King, the grantee. The respondent, First National Bank of Wichita Falls, is the trustee and executor under the will of J. E. Duncan and appears in this suit in that capacity.

At the time of the conveyance Duncan and King were the joint owners in fee simple of two tracts of land in Young County, totaling 240 acres, each owning an undivided one-half interest. In the deed Duncan conveyed his half interest to King, reserving or excepting a royalty interest therein. The amount of such interest reserved is the sole controversy in this suit.

The pertinent portions of the deed are as follows:

"That J. E. Duncan, a single man, having never been married, of the County of Young, State of Texas, for and in consideration of the sum of Ten and No/100 Dollars, and other good and valuable consideration, all cash to me in hand paid by B. W. King, the receipt of which is hereby acknowledged, have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said B. W. King, of the County of Young, State of Texas, all that certain undivided one-half (1/2) interest (being all of the interest owned by the grantor) in and to the following described land situated in Young County, Texas, to-wit:

"1st Tract—West one-half of T. E. & L. Company Survey No. 461, Abstract No. 668, containing 160 acres more or less.

"2nd Tract—Southeast one-fourth of T. E. & L. Company Survey No. 460, Abstract No. 667, containing 80 acres, more or less.

"The grantor hereby reserves unto himself, his heirs, successors and assigns for a period of ten (10) years only from this date an undivided one-eighth (1/8) of the usual and customary one-eighth royalty interest reserved by the land-owner in oil and gas and other minerals that may be produced from the hereinabove described land; the grantee, his heirs and assigns shall have the right and privilege of making, executing and delivering oil and gas leases on said land and shall receive all bonuses, rentals and renewals derived from the giving of or execution of any such oil and gas leases provided, however, any oil and gas



lease so given shall provide for a royalty of not less than one-eighth of the oil and gas and other minerals produced, saved and sold from the said land.

"The grantor, his heirs and assigns, shall never be required or entitled to join in the execution of any oil and gas lease on said land but the grantee, his heirs and assigns shall give such oil and gas leases.

"(By the term royalty as used in this reservation is meant the usual and customary one-eighth of all oil and gas and other minerals produced, saved and sold from the premises.)

"This reservation shall terminate at the expiration of ten (10) years from this date and the reserved estate shall revert to the grantee, his heirs and assigns."

The petitioner contends that since a one-half interest was conveyed in the land, the grantor reserved only one eighth of one half of the usual one-eighth royalty in the entire 240 acres. The respondent contends that the reservation covers and includes one-eighth of the one-eighth royalty in the entire 240 acres. The trial of this issue in the district court resulted in a judgment for respondent decreeing that the grantor reserved an undivided one-eighth of the usual one-eighth royalty upon the whole land and not an undivided oneeighth

Page 262

of one-half of such royalty. The judgment granted petitioner King the fee-simple title to all the land less an undivided one-eighth of the usual one-eighth royalty derived from the total production of oil, gas or other minerals from the entire land for the ten-year period stipulated in the deed, which interest so reserved was granted to the respondent bank. The judgment of the trial court was affirmed by the Court of Civil Appeals. 189 S.W.2d 347.

The inquiry in this case does not call for a discussion of the refined and subtle distinctions between a reservation and an exception in a deed, which terms are frequently used interchangeably and indiscriminately. Reynolds v. McMan Oil & Gas Co., Tex.Com.App., 11 S.W.2d 778; 26 C.J.S., Deeds, § 137, p. 439. It is sufficient to note that the property excepted or the estate reserved is never included in the grant. Each is something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant. In this instance, however, at the time of the conveyance, the grantor actually owned one-half or four-eighths of the minerals under the entire land, or all or eight-eighths of his undivided one-half interest, and thus, without incongruity, the one-eighth portion of the royalty reserved could relate either to the whole or the one-half interest in the land, depending upon the intention of the parties from the language of the entire instrument.

In support of his contention that the lesser interest was excepted from the deed the petitioner cites and relies upon only one case involving a reservation of royalty in a deed conveying a fractional interest, and that is Hooks v. Neill, Tex.Civ.App., 21 S.W.2d 532, 534, writ refused. In that case the grantors, who owned an undivided one-half interest in an acre of land, conveyed all the title and interest they owned, subject to a reservation of a "one thirty-second part of all oil on and under the said land and premises herein described *and conveyed* * * *." (Italics ours.) It was there held that the deed reserved one thirty-second of one-half of the oil of the entire land, or one sixty-fourth of the oil on and under the whole acre, and not one thirty-second thereof as contended by grantors. The decision turned upon the words "and conveyed" used in the reservation clause of the deed. Such words were emphasized by italics in the court's opinion, and in connection with the language used the court said: "* * * The language so used clearly imports—in fact, it clearly states—that grantors reserve and except from the conveyance one thirty-second part of all oil on and under the land and premises thereby conveyed. Now, it is clear, from



all the facts and circumstances confronting the parties at the time of the execution of the deed, that the premises conveyed was at most not more than a one-half undivided part of the land in controversy."

The case cited may be clearly distinguished from the instant suit in that we have no language in the deed before us which restricts or limits the reservation to the land described "and conveyed."

We think the true intention of the parties to the conveyance herein is clearly and affirmatively expressed in the deed. The granting clause specifies that the grantor is conveying an undivided one-half interest, which was all he owned, "in and to the *following described land* situated in Young County, Texas." (Italics ours.) This language points forward to what immediately follows in the instrument which is a description of each tract of land as a whole. Then comes the reservation clause which points backward to the same land described as a whole. In such clause grantor excepts from the "hereinabove described land" an undivided one-eighth of the "usual and customary one-eighth royalty reserved by the landowner", which, as a matter of judicial knowledge, we know is one-eighth of the oil and gas produced from land as a whole. State Nat. Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757. Such clause further provides that the grantor, his heirs and assigns shall have the right to execute oil and gas leases upon "said land", and receive all bonuses, rentals and renewals derived therefrom, which authority, however, is limited in that any lease so executed must provide for a royalty of not less than one-eighth of the oil, gas or other minerals produced from "said land". These provisions obviously refer to the entire land. It is further provided that the grantor, his heirs and assigns, shall never be required or entitled to join in the execution of any oil and gas lease on "said land", which in our judgment necessarily refers to the entire land. Lastly, the parties define the term "royalty" as used in the reservation as being the usual and customary oneeighth

Page 263

of all oil, gas and other minerals produced from the "premises", which again refers to the whole interest, since oil or other minerals would necessarily be produced from the whole land irrespective of the ownership of undivided shares thereof. Therefore, looking forward from the granting clause and backward from the reservation clause it seems evident that the terms "following described land", "hereinabove described land", "said land", and "premises", refer not to the one-half interest actually conveyed, as in Hooks v. Neill where the reservation was so limited, but relate to the intervening paragraphs of the deed wherein the "1st Tract" and the "2nd Tract" are particularly described as a whole in units of 160 acres and 80 acres, respectively.

By the language used the contracting parties clearly designate the dividend, the divisor and the quotient of royalty with which they were dealing in the reservation clause. They had in mind the entire 240 acres when they referred to the "usual and customary one-eighth royalty" from which the one-eighth portion was to be reserved, and consequently the dividend is the entire royalty, the divisor of course is eight, and the quotient follows as a matter of simple division. Thus in the same manner they measured the interest conveyed in the granting clause, which was one-half of the entire land, the parties used the entire royalty of all the land as the quantity from which the fractional portion of one-eighth should be derived, which method of computation resulted in a quotient of one-eighth of the royalty from the entire land.

The judgments of the trial court and Court of Civil Appeals are affirmed.



PROPERTY CODE

TITLE 4. ACTIONS AND REMEDIES

CHAPTER 22. TRESPASS TO TRY TITLE

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 22.001.  TRESPASS TO TRY TITLE.  (a)  A trespass to try title action is the method of determining title to lands, tenements, or other real property.

(b)  The action of ejectment is not available in this state.

Acts 1983, 68th Leg., p. 3509, ch. 576, Sec. 1, eff. Jan. 1, 1984.

http://www.statutes.legis.state.tx.us/Docs/PR/htm/PR.22.htm

BUSINESS ORGANIZATIONS CODE

TITLE 1. GENERAL PROVISIONS

CHAPTER 9. FOREIGN ENTITIES

SUBCHAPTER B. FAILURE TO REGISTER

Sec. 9.051. TRANSACTING BUSINESS OR MAINTAINING COURT PROCEEDING WITHOUT REGISTRATION. (a) On application by the attorney general, a court may enjoin a foreign filing entity or the entity's agent from transacting business in this state if:

(1) the entity is not registered in this state; or

(2) the entity's registration is obtained on the basis of a false or misleading representation.

(b) A foreign filing entity or the entity's legal representative may not maintain an action, suit, or proceeding in a court of this state, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter. This subsection does not affect the rights of an assignee of the foreign filing entity as:

(1) the holder in due course of a negotiable instrument; or

(2) the bona fide purchaser for value of a warehouse receipt, security, or other instrument made negotiable by law.

(c) The failure of a foreign filing entity to register does not:

(1) affect the validity of any contract or act of the foreign filing entity;

(2) prevent the entity from defending an action, suit, or proceeding in a court in this state; or

(3) except as provided by Subsection (d), cause any owner, member, or managerial official of the foreign filing entity to become liable for the debts, obligations, or liabilities of the foreign filing entity.

(d)  Subsection (c)(3) does not apply to a general partner of a foreign limited partnership.

Acts 2003, 78th Leg., ch. 182, Sec. 1, eff. Jan. 1, 2006.

http://www.statutes.legis.state.tx.us/Docs/BO/htm/BO.9.htm

BUSINESS ORGANIZATIONS CODE

TITLE 1. GENERAL PROVISIONS

CHAPTER 9. FOREIGN ENTITIES

SUBCHAPTER B. FAILURE TO REGISTER

Sec. 9.052.  CIVIL PENALTY.  (a)  A foreign filing entity that transacts business in this state and is not registered under this chapter is liable to this state for a civil penalty in an amount equal to all:

(1)  fees and taxes that would have been imposed by law on the entity had the entity registered when first required and filed all reports required by law;  and

(2)  penalties and interest imposed by law for failure to pay those fees and taxes.

(b)  The attorney general may bring suit to recover amounts due to this state under this section.

Acts 2003, 78th Leg., ch. 182, Sec. 1, eff. Jan. 1, 2006.

http://www.statutes.legis.state.tx.us/Docs/BO/htm/BO.9.htm

BUSINESS ORGANIZATIONS CODE

TITLE 1. GENERAL PROVISIONS

CHAPTER 1. DEFINITIONS AND OTHER GENERAL PROVISIONS

SUBCHAPTER A. DEFINITIONS AND PURPOSE

Sec. 1.002. DEFINITIONS. In this code:

(29) "Foreign filing entity" means a foreign entity, other than a foreign limited liability partnership, that registers or is required to register as a foreign entity under Chapter 9.

http://www.statutes.legis.state.tx.us/Docs/BO/htm/BO.1.htm